## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

**RYAN STELMACHERS, ANNA AGUIRRE, JOSHUA ALDEROTY, ROBERT ARECCHI, MICHAEL BONDS, PETER CASPER, LAUREN DUDOIT, VANESSA DUPOUX, KEVIN FAHEY, JR., RYAN FERGUSON, GENNARO FIORE, MATHEW HOMSY, EMILY MACNAUGHTON, MELISSA MUELLER, JASON MORELL, KEITH O'HALLORAN, TYSON SEABAUGH, MICHAEL SHAW, MARK TEAGUE, JOHN WARD, AND DAREK WHEATLEY,** individually and on behalf of all similarly situated individuals,

**vs.**

**MAXIM HEALTHCARE SERVICES, INC.**

Civil Action No. 1:13-CV-1062

CLASS/COLLECTIVE ACTION

JURY TRIAL DEMANDED

## STIPULATION AND SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED AND AGREED by and between Ryan Stelmachers, Anna Aguirre, Joshua Alderoty, Robert Arecchi, Michael Bonds, Peter Casper, Lauren Dudoit, Vanessa Dupoux, Kevin Fahey Jr., Ryan Ferguson, Gennaro Fiore, Matthew Homsy, Emily MacNaughton, Jason Morell, Melissa Mueller, Keith O'Halloran, Tyson Seabaugh, Michael Shaw, Mark Teague, John Ward, and Darek Wheatley, (collectively, "Class Representatives"), on behalf of themselves and all others similarly situated, on the one hand; and Maxim Healthcare Services, Inc. ("Maxim" or "Defendant"), on the other hand, (collectively "the Settling Parties") as set forth below:

## I.      THE CONDITIONAL NATURE OF THIS STIPULATION

This Stipulation and Settlement Agreement and all associated exhibits (collectively the "Stipulation") is made for the sole purpose of settling the above-captioned actions on a collective and class-wide basis.  This Stipulation and the Settlement it evidences is made in compromise of disputed claims.  Because these actions were pled as class and/or collective actions, this settlement must receive both preliminary and final approval by the Court.  Accordingly, the Settling Parties enter into this Stipulation and associated settlement on a conditional basis.  In the event the Court does not enter an Order of Final Approval, or in the event the associated Judgment does not become a Final Judgment for any reason, this

Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in Sections I, IV, 2.13.4, and 2.13.5) shall be deemed null and void *ab initio*, shall be of no force or effect whatsoever, and shall not be referred to or utilized by any party for any purpose whatsoever.  Further, the negotiation, terms, and entry of this Stipulation shall remain subject to the provisions of Federal Rule of Evidence 408, and any other analogous rules of evidence that are applicable.

Defendant denies all claims as to liability, damages, penalties, interest, attorneys' fees or costs, restitution, injunctive relief and all other forms of relief, as well as the collective and class allegations asserted in the Litigation, as that term is defined in Section 1.20.  Defendant has agreed to resolve the Litigation via this Stipulation, but to the extent this Stipulation is deemed void or the Effective Date does not occur, Defendant does not waive any procedural or substantive defenses but rather expressly reserves all rights to those defenses to challenge such claims and allegations in the Litigation upon all procedural and factual grounds, including, without limitation, the ability to challenge class and/or collective action treatment on any grounds, including, as applicable to a particular case, through an opposition to a motion for certification, a motion for decertification, a motion for dismissal of certain claims, plaintiffs and/or opt-ins, and/or a motion for summary judgment as

to any claims, plaintiffs and/or opt-ins, as well as asserting any and all other potential defenses or privileges.  The Class Representatives and Class Counsel (as defined in Section VI, 1.5, 1.9) agree that Defendant retains and reserves all of these rights and they agree not to take any position to the contrary; specifically, the Class Representatives and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that based upon this Stipulation, Defendant cannot contest class certification and/or collective action certification on any grounds or through any means, file motions for dismissal and/or summary judgment as to any claims, plaintiffs, and/or opt-ins, and/or assert any and all other potential defenses and privileges if the Litigation were to proceed.

Similarly, to the extent this Stipulation is deemed void or the Effective Date does not occur, the Class Representatives do not waive, but rather expressly reserve, all rights to prosecute all such pending claims and allegations in the Litigation upon all procedural and factual grounds, including, without limitation, through motions for class certification, conditional certification, opposing a motion for decertification, and/or motions for summary judgment.  Defendant agrees that the Class Representatives, both individually and on behalf of all others similarly situated, retain and reserve these rights and it agrees not to take any position to the contrary; specifically, Defendant agrees not to argue or present any argument, and

4

hereby waives any argument, that based upon this Stipulation, the Class Representatives cannot seek class or collective certification, oppose decertification, or move for summary judgment on any of their pending claims or Defendant's defenses if the Litigation were to proceed.

## II.    THE PARTIES TO THIS STIPULATION

This Stipulation is made and entered into by and among the following Settling Parties:  (i) the Class Representatives (on behalf of themselves and each of the Settlement Class Members), with the assistance of Class Counsel; and (ii) Defendant, with the assistance of its counsel of choice.   This Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Litigation and the Released FLSA Claims and Released Non-FLSA Claims (defined below) upon and subject to the terms and conditions hereof.

## III.   THE LITIGATION

On April 2, 2013, Plaintiff Ryan Stelmachers filed a Complaint against Maxim in the United States District Court for the Northern District of Georgia asserting claims for overtime pay pursuant to the Fair Labor Standards Act ("FLSA") ("Original Complaint").  Plaintiffs' Original Complaint states that Mr. Stelmachers is seeking relief on his own behalf and on behalf of an alleged class of similarly situated current and former Healthcare Recruiters, Homecare Recruiters,

Staffing Recruiters, and Senior Recruiters on a nationwide basis who have been employed by the Company from April 2, 2010 to the present.

On May 9, 2013, Maxim filed its Answer, denying the allegations in the Original Complaint and contending that some of the individuals in the purported class are bound by the November 2, 2012 court approved settlement in the consolidated case captioned *Ene, et al. v. Maxim Healthcare Services, Inc.* (S.D. Tex. 4:09-CV-02453) ("*Ene* Settlement").[1]

On May 15, 2013, Plaintiffs' filed their Motion for Conditional Class Certification, which Maxim opposed.  On August 5, 2013, the Court granted Maxim's Motion in part and conditionally certified a class of current and former Homecare Recruiters.  On September 5, 2013, class notice was sent to over 1,200 FLSA potential class members, and 248 Homecare Recruiters then joined the FLSA collective action.  Plaintiffs did not send notice to any Homecare Recruiters who were barred in full from recovery by the court-approved settlement in the *Ene* Settlement or any other court-approved settlement.

On January 3, 2014, Plaintiffs' filed an Amended Complaint, which included 15 new Rule 23 state law overtime claims, in addition to Plaintiffs' previously pled

---

[1] The full consolidated case name is "*Tricia Ene, Julian Betancourt, Benjamin Matthew Ruiz-Stupi, Aimee McPherson, Yves Antoine, Sean Cummings and Donald Bradetich, individually and on behalf of all other similarly situated v. Maxim Healthcare Services, Inc.*"

FLSA collective action.  The Amended Complaint did not plead jurisdiction over the state law claims under the Class Action Fairness Act ("CAFA") amendments to federal diversity jurisdiction statute 28 U.S.C. § 1332(d).

On February 3, 2014, Maxim filed a Motion to Dismiss and/or Strike Plaintiffs' Rule 23 state law claims.  On March 18, 2014, the Court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims, largely for management reasons, and entered an order dismissing those claims without prejudice, and did not address CAFA jurisdiction, as it was not pled in Plaintiffs' Amended Complaint.

With leave from the Court, Plaintiffs' filed a Second Amended Complaint on or about April 30, 2014 pleading state law overtime claims in 14 states and related state law claims and Class Representatives under the state laws of California, Connecticut, Illinois, Massachusetts, Maryland, Missouri, Nevada, New York, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, or Washington, as well as adding California state law claims for rest breaks, reimbursement of business expenses, and certain claims under the California Private Attorneys General Act ("PAGA").

## IV.   **DEFENDANT'S DENIAL OF WRONGDOING OR LIABILITY**

Defendant specifically and generally denies all of the claims asserted in the Litigation, denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Litigation, and makes no concession or admission of wrongdoing or liability of any kind whatsoever. Defendant maintains that all of Maxim's Homecare Recruiters (which, as defined below, includes all job titles/job codes used by Maxim to refer to exempt Homecare Recruiters) were and always have been properly classified as exempt employees, that no overtime of any kind is owed to them, and that, for any purpose other than settlement, the Litigation is not suitable or appropriate for class or collective action treatment pursuant to either Federal Rule of Civil Procedure 23 or 29 U.S.C. §216(b). Nonetheless, Defendant concluded that the further defense of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. In reaching this conclusion, Defendant has also taken into account the uncertainty and risks inherent in any litigation. Defendant has, therefore, determined that it is desirable and beneficial for it to settle the Litigation in the manner and upon the terms and conditions set forth in this Stipulation.

## V.    CLAIMS OF THE CLASS REPRESENTATIVES AND BENEFITS OF SETTLEMENT

The Class Representatives and Class Counsel believe that the claims asserted in the Litigation have merit and that evidence developed to date supports their claims.  However, the Class Representatives and Class Counsel recognize and acknowledge the expense and length of time associated with the need to prosecute the Litigation through trial and through appeals.  The Class Representatives and Class Counsel have also taken into account the uncertain outcome and the risk associated with any litigation, as well as the difficulties and delays inherent in any litigation.  Based upon their evaluation, the Class Representatives and Class Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of the Class Representatives and the Settlement Class.

## VI.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED by and between the Class Representatives (on behalf of themselves and the Settlement Class Members) and Defendant, with the assistance of their respective counsel of record, that, as among the Settling Parties, including all Settlement Class Members, the Litigation and the Released FLSA Claims and Released Non-FLSA Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed, with prejudice, as to all Settling

Parties, upon and subject to the terms and conditions of this Stipulation and the Judgment.

**1.    <u>Definitions.</u>**

As used in all parts of this Stipulation, the following terms have the meanings specified below:

1.1. "Administrative Costs" means the amount paid by Maxim directly to the Claims Administrator for its costs in connection with administering the terms of this Stipulation, including the costs of all notices set forth in Section 2.5 and its subsections.   Claims Administrator costs are not included in the Maximum Settlement Amount.

1.2. "Claims    Administrator"    means    the    third-party    claims administration firm of Rust Consulting, Inc., or another administrator mutually agreed to by the Parties by no later than ten (10) business days after Preliminary Approval which shall establish an account which shall be treated at all times as a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, et. seq. (the "Qualified Settlement Fund" as defined below).   References herein to actions and responsibilities of the Claims Administrator shall be to those actions and responsibilities it shall take in its position as administrator of the Qualified Settlement Fund.

1.3. "Claim and Consent to Join Settlement Form" means Form 1-A to the Notice Regarding Pendency of Class and Collective Action (attached hereto as Exhibit 1) as approved by both the Settling Parties and the Court, which a Class Member must submit in order to become an eligible Participating Claimant and recover a Settlement Payment pursuant to Section 2.2, except for Class Representatives and the Existing FLSA Opt-Ins, who shall be deemed Participating Claimants under this Stipulation.

1.4. "Class" means collectively, the following, excluding any Homecare Recruiters wholly barred by the prior *Ene* Settlement or any other applicable court-approved settlement:

    a.    All Existing FLSA Opt-Ins who have filed timely and valid consent to join forms in this Action;

    b.    All Rule 23 Class Members as defined in Section 1.39; and

    c.    Any other current or former Homecare Recruiters, for any applicable limitations period, that Maxim agrees to include in the Class.

1.5. "Class Counsel" means, collectively, the law firms of SOMMERS SCHWARTZ, P.C. and JOHNSON BECKER, PLLC, and their attorneys, which warrant and represent that no other law firms or attorneys are serving in any capacity as "Class Counsel."

1.6. "Class Member" or "Member of the Class" means an individual who is a member of the Class as defined in Section 1.4, except for individuals who previously settled or entered into a release agreement supervised by a court or agency which has released the claims at issue in the Litigation.

1.7. "Class Notice" means a notice entitled "Notice To Class Members Regarding Pendency of a Class and Collective Action and Notice of Hearing On Proposed Settlement" to be submitted to the Court for review and approval, substantially in the form attached hereto as Exhibit 1.

1.8. "Class Period" means the period running from the beginning of the applicable statute of limitations period for each Class Member through the Final Approval Date, for settlement purposes only, as follows:

a. Existing FLSA Opt-Ins:  If you previously joined the Litigation you are eligible, for settlement purposes only, to receive a Settlement Payment based on the number of weeks that you worked as a Homecare Recruiter during the two (2) years prior to the date you joined this Litigation through the Final Approval Date.

b. Rule 23 Class Members:  If employed in:

i. New York or Oregon—Six (6) years prior to the date of Preliminary Approval through the Final Approval Date;

ii. <u>California</u>—Four (4) years prior to the date of Preliminary Approval through the Final Approval Date;

iii. <u>Illinois, Maryland, Pennsylvania, or Washington</u> —Three (3) years prior to the date of Preliminary Approval through the Final Approval Date; and

iv. <u>Connecticut, Massachusetts, Missouri, Nevada, New Jersey, North Carolina, and Ohio</u> – Two (2) years prior to the date of Preliminary Approval through the Final Approval Date.

c. <u>Weeks Worked shall be calculated using the longest statute of limitations period applicable to that individual.</u>  For example, if a Rule 23 Class Member <u>is</u> an Existing FLSA Opt-In and also worked in Maryland, he or she shall receive a Settlement Payment based on the number of weeks that he or she worked as a Homecare Recruiter during the three (3) years prior to his or her opt-in date through the Final Approval Date.  In comparison, if a Rule 23 Class Member is <u>not</u> an Existing FLSA Opt-In and also worked in Maryland, he or she shall receive a Settlement Payment based on the number of weeks that he or she worked as a Homecare Recruiter during the three (3) years prior to the date of Preliminary Approval through the Final Approval Date.

1.9.  "Class Representatives" or "Plaintiffs" means Ryan Stelmachers, Anna Aguirre, Joshua Alderoty, Robert Arecchi, Michael Bonds, Peter Casper, Lauren Dudoit, Vanessa Dupoux, Kevin Fahey Jr., Ryan Ferguson, Gennaro Fiore, Matthew Homsy, Emily MacNaughton, Jason Morell, Melissa Mueller, Keith O'Halloran, Tyson Seabaugh, Michael Shaw, Mark Teague, John Ward, and Darek Wheatley.   For the purposes of this Stipulation, Class Representatives are also considered Existing FLSA Opt-Ins.

1.10.  "Court" means the United States District Court for the Northern District of Georgia.

1.11.  "Database of Class Members" means the electronic file to be provided by Defendant to the Claims Administrator containing a list of each Class Member, including each person's name, last known address, social security number, employee identification number, state(s) where employed, and number of Weeks Worked during the applicable Class Period.

1.12.  "Defendant Releasees" means Maxim Healthcare Services, Inc., and Maxim's current, former, and future affiliates, including, without limitation, parents, subsidiaries, and related entities, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, employee benefit plan administrators and

14

fiduciaries, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities.

      1.13. "Effective Date" means the date on which the Judgment becomes a Final Judgment.

      1.14. "Enhancement Award(s)" means an amount approved by the Court to be paid to the Class Representatives as set forth in Section 2.10.2, in recognition of their efforts in coming forward as Class Representatives or otherwise benefiting the Class.

      1.15.  "Existing FLSA Opt-Ins" means the Class Representatives, all other individuals who have filed timely and valid consent forms with the Court in this action as of the filing of the Motion for Preliminary Approval (using a two (2) year FLSA statute of limitations from the date that their consent form was filed with the Court to determine if their dates of employment as a Homecare Recruiter make their consent form timely), who have not otherwise withdrawn their consent forms or been dismissed by the Court.  For the purposes of this Stipulation, the Existing FLSA Opt-ins shall be deemed "Participating Claimants."

      1.16. "Final Approval and Fairness Hearing" means a hearing set by the Court to take place at the Court's convenience, but at least fourteen (14)

calendar days after the Notice Response Deadline, for the purpose of (i) finally determining the fairness, adequacy, and reasonableness of this Stipulation and the associated Settlement pursuant to class action procedures and requirements; (ii) determining the good faith of this Stipulation and associated Settlement; (iii) determining Class Counsel's attorneys' fees; (iv) determining the payment of Enhancement Awards to the Class Representatives (or other Settlement Class Members agreed upon by the Settling Parties); (v) addressing any objections to the Settlement; and (vi) entering an Order of Final Approval and Judgment.

      1.17. "Final Judgment" means the latest of: (i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal, with prejudice, of the last pending appeal from the Judgment; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Judgment.  Notwithstanding the foregoing, any proceeding or order, or any appeal or petition for a writ pertaining solely to the award of attorneys' fees, attorneys' costs, and/or Administrative Costs shall not in any way delay or preclude the Judgment from becoming a Final Judgment.

      1.18. "Judgment" means the judgment to be rendered by the Court pursuant to this Stipulation.

1.19. "Last Known Address(es)" means the most recently recorded mailing address for a Class Member as such information is contained in Maxim's database(s) containing personnel and/or payroll information.

1.20. The "Litigation" means the above captioned matter between the Settling Parties.

1.21. "LWDA Payment" means the amount of $2,500 to be paid to the California Labor and Workforce Development Agency ("LWDA") as set forth in Section 2.2.5 which payment shall by paid by Maxim.   LWDA payment is not included in the Maximum Settlement Amount.

1.22. "Maximum Settlement Amount" shall mean the total maximum amount that Defendant shall pay under the terms of this Stipulation, which is the gross sum of One Million, Five Hundred Seventy-Five Thousand Dollars and No Cents ($1,575,000.00), and includes, without limitation, all Settlement Payments to the Participating Claimants based on Weeks Worked, Class Counsel's attorneys' fees and costs, and Enhancement Awards.   As set forth herein, the Claims Administrator will issue all of the above-referenced payments from the Qualified Settlement Fund in accordance with the applicable provisions of this Stipulation, except for payments to be made and treated as unpaid overtime, other wages, and, where applicable, premium wages, paid to Participating Claimants who are

employed by Defendant during the 2014 calendar year, which amounts will be paid by Defendant to such Participating Claimants directly by Defendant (including any applicable amounts required to be withheld and deposited by Defendant with applicable taxing authorities on behalf of such Participating Claimants).

1.23. "Net Settlement Amount" means the Maximum Settlement Amount less the Class Counsel's attorneys' fees and costs and Enhancement Awards.

1.24. "Notice Regarding Pendency of Class and Collective Action" means "Class Notice" as defined herein.

1.25. The "Notice Mailing Date" shall be the date on which the Claims Administrator initially mails the Settlement Documents to the Class Members, which will occur within fifteen (15) business days after the receipt of the Database of Class Members from Defendant.

1.26. The "Notice Response Deadline" shall be the date sixty (60) calendar days after the Notice Mailing Date.

1.27. "Opt-Out Request Form" means the form attached hereto as Form 1-D, signed by a Rule 23 Class Member, which must be submitted in the manner and within the time frame set forth in the Class Notice.

1.28.  "Opt-Out(s)" means any Rule 23 Class Member(s) who timely submitted an Opt-Out Request Form.

1.29.  "Order of Final Approval" or "Final Approval" shall mean an Order to be entered and filed by the Court granting Final Approval of this Stipulation, a proposed Order of which shall be submitted to the Court for review and approval.

1.30.  "Participating Claimant(s)" means the Class Representatives and all Existing FLSA Opt-Ins who submitted a valid and timely Claim and Consent to Join Settlement Form and Rule 23 Class Members who submit a valid and timely Claim and Consent to Join Settlement Form in response to the Class Notice.

1.31.  "Preliminary Approval Date" means the date that the Court enters the Preliminary Approval Order preliminarily approving this Stipulation and approving the sending of Class Notice.

1.32.  "Preliminary Approval Hearing" means the Court hearing to consider the preliminary approval of the terms of this Stipulation, including the sending of Class Notice.

1.33.  "Preliminary Approval Order" means the Order of the Court preliminarily approving the terms of this Stipulation, substantially in the form

attached hereto as Exhibit 3, including the conditional certification, for settlement purposes only, of a class and collective action and approving the establishment of, and the continuing jurisdiction over, the Qualified Settlement Fund.

   1.34. "Qualified Settlement Fund" means the account established by the Claims Administrator which the Parties agree will at all times be treated as a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, et. seq. The Parties agree the Claims Administrator shall, in establishing the account, make any such elections as necessary or advisable to carry out the "relation back election" (as defined in Treas. Reg. §1.468B-1(j)(2)(i)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary Parties, and to cause the appropriate filing to occur.  The Parties further agree and acknowledge that, for purposes of Section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and the Treasury Regulations promulgated thereunder, only the Defendant shall be treated as a "transferor" (within the meaning of such term under Treasury Regulations §1.468B-1(d)(1)) with respect to the Qualified Settlement Fund.

1.35. "Reasonable Address Verification Measure" shall mean the utilization of the National Change of Address Database maintained by the United States Postal Service to review the accuracy of and, if possible, to update, a mailing address.

1.36. "Recruiter(s)" or "Homecare Recruiter(s)" means those individuals currently or formerly employed by Maxim who are referred to in Maxim records under a number of different job titles, including Homecare Recruiters and Recruiter-Homecare, as those job titles were used by Maxim to refer to Homecare Recruiters working in Maxim's Homecare branch offices throughout the United States.  The definition does <u>not</u> include the time a Class Member spent as an overtime eligible Recruiter Trainee or in a position other than Homecare Recruiter.

1.37. "Released FLSA Claims" means any and all federal law claims, obligations, demands, actions, rights, causes of action, and liabilities against Defendant Releasees based on the facts as pleaded, of whatever kind and nature, character, and description, whether known or unknown, and whether anticipated or unanticipated, including claims that the Class Member does not know of or suspect to exist in his/her favor, based on his/her employment with Maxim as a Homecare Recruiter, that accrued during the period ending on the date of the Order of Final

21

Approval, for any type of relief, including without limitation, claims for wages, penalties, liquidated damages, interest, attorneys' fees, litigation costs, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201, et seq., with respect to his/her employment by Maxim as a Homecare Recruiter as defined herein.

1.38. "Released Non-FLSA Claims" means any and all applicable state and local law claims, obligations, demands, actions, rights, causes of action, and liabilities against Defendant Releasees based on the facts as pleaded, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, statute, common law, or other applicable law or regulation, whether known or unknown, and whether anticipated or unanticipated, including claims that the Class Member does not know of or suspect to exist in his/her  favor, based on his/her employment with Maxim as a Homecare Recruiter, that accrued during the period ending on the date of the Order of Final Approval, for any type of relief, including without limitation, claims for wages, damages, premium pay, unpaid costs, expenses, penalties (including any applicable late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on the following categories of allegations with respect to his/her employment with Maxim as a Homecare

Recruiter as defined herein: (a) all claims asserted or which could have been asserted in the Litigation (as defined above) which arose under the facts alleged and/or applicable state or local wage and hour laws and regulations; (b) all claims under applicable state or local laws and regulations for the failure to pay any type of overtime compensation or other wages to Homecare Recruiters (including late payments of wages or business expenses); (c) all claims which arose under any applicable state or local laws or regulations for the failure to provide or pay for meal periods and/or rest periods for Homecare Recruiters; (d) all claims under applicable state or local laws or regulations, including but not limited to alleged recordkeeping violations, stemming from or based on the alleged misclassification of a Homecare Recruiter as an exempt employee; and (e) all claims for penalties or additional damages which allegedly arise from the claims described in (a) through (d) inclusive above under applicable state or local law.  The Released Non-FLSA Claims are the claims meeting the above definition under any and all applicable state and local statutes, regulations or common law, including without limitation, those set forth in the compendium of state specific wage and hour laws attached hereto as Exhibit 2, as well as any federal, state or local claims related to any claim for benefits arising from any Settlement Payment under this Settlement Agreement,

including but not limited to the Employee Retirement Income Security Act ("ERISA").

1.39. "Rule 23 Class Member(s)" or "Member(s) of the Rule 23 Class" means a person who is a putative class member of the proposed Rule 23 classes as of the Preliminary Approval Date as defined in the Plaintiffs' Second Amended Complaint.

1.40. "Settlement" means the terms and conditions set forth in the "Stipulation" as defined herein.

1.41. "Settlement Class" or "Settlement Class Members" means all of the Rule 23 Class Members who do not opt out of the Settlement Class by timely submitting an Opt-Out Request Form pursuant to Section 2.5.5, the Existing FLSA Opt-Ins, and any other current or former Homecare Recruiters that Maxim agrees to include in the Class who submit a timely and valid Claim and Consent to Join Settlement Form.  As set forth herein, all Settlement Class Members will be bound by the Released Non-FLSA Claims portion of the Judgment if the Effective Date occurs.  In addition, all Existing FLSA Opt-Ins, as well as any and Rule 23 Class Members who submit a timely and valid Claim and Consent to Join Settlement Form pursuant to this Stipulation, respectively, shall be bound by the Released FLSA Claims portion of the Judgment if the Effective Date occurs.

1.42. "Settlement Documents" means the Class Notice (attached hereto as Exhibit 1), the Claim and Consent to Join Settlement Form (attached hereto as Form 1-A), the Change of Name or Address Information (attached hereto as Form 1-B), Letter From Claims Administrator to Class Members Who Submit Opt-In and Opt-Out Forms (attached hereto as Form 1-C), the Opt-Out Request Form (attached hereto as Form 1-D), and the Compendium of State Specific Wage and Hour Laws (attached hereto as Exhibit 2) (subject to Court approval).

1.43. "Settling Parties" or the "Parties" means Defendant and the Class Representatives on behalf of themselves and the Settlement Class.

1.44. "Settlement Payment(s)" means the portion of the Net Settlement Amount allocated and distributable to each Participating Claimant from the Qualified Settlement Fund and/or the Defendant for those employed by Maxim in 2014, as the case may be, based on the number of Weeks Worked by the Participating Claimant as a Homecare Recruiter during the applicable Class Period through the Final Approval Date.  Only individuals who become Participating Claimants are eligible to receive a Settlement Payment under this Stipulation.

1.45. "Stipulation" means this Stipulation and Settlement Agreement together with all of its attachments and exhibits, which the Settling Parties understand and agree sets forth all material terms and conditions of the Settlement

between them, and which is subject to Court approval.  It is understood and agreed that, except with respect to the payment of any Administrative Costs actually incurred, Defendant's obligations for payment under this Stipulation are conditioned on, *inter alia,* the occurrence of the Effective Date.

1.46.  "Updated Address" means a mailing address that was updated via a Reasonable Address Verification Measure or via an updated mailing address provided by the United States Postal Service or a Class Member, or any other source.

1.47.  "Weeks Worked" shall mean the number of weeks for which the Class Member received pay for work as a Homecare Recruiter for Maxim during the applicable Class Period.  The definition of Weeks Worked does <u>not</u> include any full weeks in which a Class Member worked either as an overtime eligible Recruiter Trainee or in a position other than that of Homecare Recruiter, or any full weeks barred by the *Ene* Settlement or any other applicable court-approved settlement.

1.48. "Workweek Amount" means the Net Settlement Amount divided by the Weeks Worked by all Class Members in states other than California plus the Weeks Worked by Class Members in California multiplied by 2 *(Net*

*Settlement Amount ÷ (Weeks Worked by non-California Class Members + (Weeks Worked by California Class Members x 2)).*

## 2. <u>The Settlement</u>

2.1.        *Certification of a Class and Collective Action for Settlement Purposes Only*

2.1.1. The Settling Parties stipulate, for settlement purposes only, to the certification by the Court of a Rule 23 class as to all state law claims asserted in the Litigation, and further stipulate, for settlement purposes only, to the certification by the Court of a collective action as to all FLSA claims asserted in the Litigation.

2.1.2. If, for any reason, the Court does not approve this Stipulation, fails to enter the Order of Final Approval, or fails to enter the Judgment, or if this Stipulation is lawfully terminated for any other reason, the Settling Parties' stipulation to the certification of a Rule 23 class and FLSA collective action shall be deemed null and void *ab initio*, and Defendant shall retain the absolute right to dispute the propriety of class certification and collective action certification on all applicable grounds.

2.2.        *Consideration to Settlement Class Members.*

2.2.1. Calculation of Settlement Payment:   Each Participating Claimant's Settlement Payment will be based on the number of Weeks Worked as a Homecare Recruiter during the applicable Class Period as follows:

2.2.1.1.   Participating Claimants who worked in states other than California during the applicable Class Period shall be paid based on his/her individual Weeks Worked according to the following formula: (*Weeks Worked x Workweek Amount = Settlement Payment*).

2.2.1.2.   Participating Claimants who worked in California during the applicable Class Period shall be paid based on his/her individual Weeks Worked according to the following formula: (*Weeks Worked x Workweek Amount x 2 = Settlement Payment*).

2.2.2. The Settlement Payment to each Participating Claimant who did not work in California shall be composed of two separate segments.  The first segment shall constitute an amount equal to fifty percent (50%) of the total payment to that Participating Claimant and shall be deemed payment in settlement of claims for unpaid overtime or other wages and is subject to appropriate deductions and withholdings for wages by the Claims Administrator.  The second

segment shall constitute the remaining fifty percent (50%) of the Settlement Payment to that Participating Claimant and shall be deemed payment in settlement of claims for liquidated damages, interest, penalties, and all other non-wage income.

2.2.3. The Settlement Payment to each Participating Claimant who worked in California shall be composed of two segments.  The first segment shall constitute fifty percent (50%) of the total Settlement Payment to that Participating Claimant and shall be deemed payment in settlement of claims for unpaid overtime wages, premium wages, or other wages, subject to appropriate deductions and withholdings for wages by the Claims Administrator.  The second segment shall constitute fifty percent (50%) of the total Settlement Payment to that Participating Claimant and shall be deemed payment in settlement of claims for statutory and civil penalties, liquidated damages, interest, and all other non-wage income.

2.2.4. As further detailed in Sections 2.3.1 and 2.3.2, and for each payment made pursuant to Sections 2.2, 2.8, and 2.10, the Claims Administrator from the Qualified Settlement Fund, or as applicable, the Defendant for those employed by Maxim in 2014, shall issue the Settlement Payments to eligible Participating Claimants, and both will report each payment to state and federal

government authorities, including the Internal Revenue Service, as required by law.

2.2.5. In addition to the Settlement Payments paid to Participating Claimants set forth in Section 2.2.1, which shall be paid by the Claims Administrator, Defendant shall pay the LWDA Payment of $2,500 directly to the LWDA.

2.3.      *Taxes.*

2.3.1. Those segments allocated to the settlement of claims for unpaid wages (a) shall be subject to required withholdings and deductions by the Claims Administrator or the Defendant for those employed by Maxim in 2014, as the case may be, and so the net amounts payable will be less than the gross amounts; and (b) shall be reported on Form W-2 (and such other state or local tax reporting forms as may be required by law) with respect to the year of payment as wage income to the Participating Claimant either by the Claims Administrator on behalf of the Qualified Settlement Fund or by the Defendant.  Those payments allocated to all other claims, including without limitation, claims for statutory and civil penalties, liquidated damages, interest, and all other non-wage income (a) shall not be subject to withholdings and deductions by the Claims Administrator, and so the net amounts payable will be equal to the gross amounts; and (b) shall be reported

in the year of payment as non-wage income to the Participating Claimants on a Form 1099 issued by the Claims Administrator on behalf of the Qualified Settlement Fund and such other state or local tax reporting forms as may be required by law.    As to the payments reported as non-wage income, the Participating Claimants agree to pay and indemnify and hold harmless Defendant and the Qualified Settlement Fund with respect to any taxes due or owing by Participating Claimants on such payments; notwithstanding the foregoing, Defendant shall remain liable for the employer's share of employment taxes payable, if any were found to be due and owing, with respect to such payments. Other than as set forth above, neither Defendant nor the Claims Administrator on behalf of the Qualified Settlement Fund will withhold from the payments to each Participating Claimant any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Order of Final Approval by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to Participating Claimants shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by Defendant

Maxim, and no payment made pursuant to this Stipulation will be considered as "Compensation" under the Allegis Group, Inc. Retirement Savings Plan, Maxim Healthcare Services Incentive Appreciation Rights ("SAR") Plan, or Maxim Healthcare Services, Inc. Incentive Investment Plan (Plans A and/or B) or otherwise require any contribution or award under any such plan, or otherwise modify benefits, contributions or coverage under any other employee benefit plan or program of Defendant Maxim.

2.3.2. Other than the withholding and reporting requirements set forth in Section 2.3.1, Participating Claimants shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income tax or other tax or any other withholdings, if any, on any of the payments made pursuant to this Section VI of this Stipulation. Defendant shall be responsible for contributing to the Qualified Settlement Fund an amount, determined in consultation with the Claims Administrator, equal to the employer's share of any applicable payroll taxes, as may be adjusted for any payments of such applicable payroll taxes which the Defendant will pay directly to the appropriate taxing authority, and the parties expressly agree that such employer payroll taxes are not a part of the Maximum Settlement Amount and shall be contributed to the Qualified Settlement Fund in addition to the Maximum Settlement Amount.

Defendant makes no representation, and it is understood and agreed that Defendant has made no representation, as to the taxability to any Participating Claimants of any portion of the Settlement Payments, the payment of any attorneys' fees and costs to Class Counsel, or the payment of any Enhancement Awards. The Class Notice will advise each Class Member to seek his/her own personal tax advice prior to acting in response to the Class Notice, and Defendant, the Class Representatives, and Class Counsel agree that each Class Member will have an adequate opportunity to seek tax advice prior to acting in response to the Class Notice.

2.4.     *Court Approval of Class Notice and a Settlement Hearing.*

2.4.1. On or around April 30, 2014, the Class Representatives, by and through their counsel of record in the Litigation, shall file this Stipulation with the Court and the Class Representatives shall move for preliminary approval of this Stipulation. Class Counsel will prepare and file the preliminary approval motion with the Court, which shall be provided to Defendant's counsel for review and comment prior to filing. Through the motion for preliminary approval, the Class Representatives, through their counsel of record, will request the Court to enter the Preliminary Approval Order approving the terms of this Stipulation, certify a class and collective action for settlement purposes only as provided in Section 2.1.1,

approve the sending of the Class Notice, and schedule the Final Approval and Fairness Hearing for the purposes of determining the fairness of the Settlement, whether to grant Final Approval of the terms of this Stipulation, and to enter Judgment.

2.4.2. A decision by the Court not to enter the Preliminary Approval Order in its entirety, or a decision by the Court to enter the Preliminary Approval Order with modifications (other than modifications concerning the proposed amount of any attorneys' fees or costs to be paid to Class Counsel or the amount of any Enhancement Awards) that either of the Settling Parties determines in its reasonable and good faith judgment to be material, will be discretionary grounds for that Settling Party to terminate this Stipulation by providing written notice to the other Settling Party and the Court so stating, such notice to be filed within twenty-one (21) calendar days of receipt of the Court's decision.

2.4.3. If any deadlines related to this Stipulation cannot be met, Class Counsel and counsel for Defendant shall confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Stipulation.  In the event the Settling Parties fail to reach such agreement, any of the Settling Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Stipulation, provided that such a request to the Court may

seek only reasonable modifications of the dates and deadlines contained in this Stipulation and no other changes.

2.4.4. If the Court enters the Preliminary Approval Order, then at the resulting Final Approval and Fairness Hearing, the Class Representatives and Defendant, through their counsel of record, shall address any timely written objections, if any, from Existing FLSA Opt-ins (except Class Representatives) and Rule 23 Class Members who have not filed an Opt-Out Request Form, as well as any timely stated concerns of any federal or state official who receives a notice under the Class Action Fairness Act ("CAFA") (*See* Exhibit 4), if any, and any concerns of the Court, if any, and shall and hereby do, unless provided otherwise in this Stipulation, stipulate to Final Approval of this Stipulation and entry of the Judgment by the Court.

2.5.        *Notice to Class Members; Responses to the Notice.*

2.5.1. Within fifteen (15) business days after the Court issues the Preliminary Approval Order, Defendant shall provide to the Claims Administrator in electronic form, a list including the following information for each Class Member: each person's name, last known address, social security number, employee identification number, state(s) where employed, and the number of Weeks Worked for which the Class Member was paid as a Homecare Recruiter

during the applicable Class Period ("Database").  The Database shall be based on

Defendant's payroll, personnel, and/or other business records and provided in a

format acceptable to the Claims Administrator.  Defendant agrees to consult with

the Claims Administrator prior to the production date to ensure the format of the

list will be acceptable to the Claims Administrator.  Upon production of the

database, Defendant will verify that, to the best of its knowledge, the database is

complete and accurate and provides all of the information required pursuant to this

Stipulation and any applicable Court orders.  Class Counsel may provide the

Claims Administrator with any information that may assist the Claims

Administrator in obtaining current contact information for any Class Member.  The

Claims Administrator shall maintain the Database, and all data contained within

the Database, as private and confidential and shall not disclose such data to any

persons or entities other than Counsel for Defendant, except that copies of claim

forms submitted to the Claims Administrator shall be provided by the Claims

Administrator to Class Counsel and Defense Counsel, and relevant information

may be provided to Class Counsel to the extent necessary to address a disputed

claim, and to the extent not covered above, information may be provided to Class

Counsel to respond to a specific inquiry from a Class Member.  The Database or

information contained therein is being supplied solely for purposes of the

administration of the Settlement set forth in this Stipulation and hence cannot be used by the Claims Administrator or Class Counsel for any other purpose. The Settling Parties agree that the information in the Database will not be used to solicit Class Members to file any claim, charge or complaint of any kind whatsoever against Defendant or for any other purpose other than to administer the Settlement under the terms provided herein. Upon receipt of the Database, the Claims Administrator shall check with the U.S. Postal Service National Change of Address Database and update any addresses with any new information found regarding the location of Class Members.

2.5.2. Within fifteen (15) business days of receipt of the Database of Class Members from Defendant, the Claims Administrator will send via first class mail the Court-approved Class Notice and related Settlement Documents to each Class Member. Unless the Settling Parties agree otherwise in writing or the Court so orders, each of the Notices shall be mailed to the Last Known Addresses of the Class Members no later than the Notice Mailing Date.

2.5.3. Existing FLSA Opt-Ins shall be deemed Participating Claimants and thus members of the Settlement Class. Existing FLSA Opt-Ins are bound by the Judgment and are subject to the Released FLSA Claims as defined in Section 1.37 and Released Non-FLSA Claims as defined in Section 1.38. The Class Period

for Existing FLSA Opt-Ins will be two (2) years prior to the date he/she opted in to the Litigation, unless he/she worked as a Homecare Recruiter in California, Connecticut, Illinois, Massachusetts, Maryland, Missouri, Nevada, New York, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, or Washington, in which case the longer statute of limitations for the particular state shall apply, if applicable.

2.5.4. Rule 23 Class Members may elect to become Participating Claimants.  Rule 23 Class Members who wish to exercise this option and submit a claim for payment under this Stipulation must fully and timely complete, execute, and return, per the instructions therein, the form entitled "Claim and Consent to Join Settlement Form" (attached to the Class Notice as Form 1-A) within sixty (60) calendar days from the date of mailing of the Class Notice.

2.5.4.1.    If a valid and properly executed Claim and Consent to Join Settlement Form is not received by the Claims Administrator from a Rule 23 Class Member on or before the Notice Response Deadline, then that individual will have no right to be a Participating Claimant and will have no right to receive payment under this Stipulation,

provided that Maxim reserves the right in its sole discretion to accept and resolve late or disputed claims.

2.5.4.2.    Unless they timely submit an Opt-Out Request Form pursuant to section 2.5.5, Rule 23 Class Members shall be deemed members of the Settlement Class and shall be subject to the Released Non-FLSA Claims portion of the Judgment even if they do not submit a Claim and Consent to Join Settlement Form in a timely and proper manner.

2.5.4.3.    Only Participating Claimants will be subject to the Released FLSA Claims.    Consistent with the law, however, the statute of limitations for an FLSA claim shall continue to run until a person affirmatively opts into, or files, an FLSA suit.

2.5.5. Rule 23 Class Members, except for Class Representatives, will have forty-five (45) calendar days from the date of mailing the Settlement Documents within which to opt-out of the Settlement set forth in this Stipulation. Rule 23 Class Members who wish to exercise this option must timely submit an Opt-Out Request Form.  The Opt-Out Request Form must be postmarked on or

before forty-five (45) calendar days from the date of mailing the Settlement Documents.

    2.5.5.1.    As noted above, Rule 23 Class Members who do not timely submit an executed Opt-Out Request Form shall be deemed part of the Settlement Class and bound by Released Non-FLSA Claims portion of the Judgment even if they do not submit a Claim and Consent to Join Settlement Form in a timely and proper manner.

    2.5.5.2.    Rule 23 Class Members who timely submit an executed Opt-Out Request Form shall have no further role with respect to the settlement set forth in this Stipulation, and for all purposes they shall be regarded as if they never were a Class Member, and thus they shall not be entitled to any payment as a result of this Stipulation and shall not be entitled to or permitted to assert an objection to this Stipulation.

    2.5.5.3.    The Class Notice shall advise Rule 23 Class Members of their ability to opt-out of this Stipulation and of the consequence thereof.  Neither the Settling Parties

nor any of their counsel will solicit any Rule 23 Class Member to submit an Opt-Out Request Form.

2.5.6. Rule 23 Class Members who timely submit both an Opt-Out Request Form and a Claim and Consent to Join Settlement Form shall be sent a cure letter (in a form similar to that attached hereto as Form 1-C) by the Claims Administrator seeking clarification of whether they intend to opt out of the Settlement or become a Participating Claimant. The letter will state that, unless the Rule 23 Class Member clarifies within seven (7) calendar days that he/she intends to opt out, the Class Member will be deemed to be a Participating Claimant.

2.5.7. Existing FLSA Opt-Ins (except Class Representatives) and Rule 23 Class Members who have not filed an Opt-Out Request Form will have sixty (60) calendar days from the date of mailing the Settlement Documents within which to file an objection to the Settlement set forth in this Stipulation. No other Class Members may file an objection. To object, an individual must file a written objection and a notice of intention to appear at the Final Approval and Fairness Hearing, send copies to the Claims Administrator as set forth in the Class Notice, and appear at the Final Approval and Fairness Hearing. The Claims Administrator shall supply the written objections and notices of intention to appear to counsel for the Settling Parties. The Settling Parties and their counsel agree that they will not

solicit, encourage, counsel or advise any individual to object to the Settlement set forth in this Stipulation.

2.5.8. Class Members who wish to change the name or address listed on the envelope in which the Class Notice was first mailed to them (e.g. for future reference and mailings from the Court or Claims Administrator, if any) must fully complete, execute, and mail, per the instructions therein, the form entitled "Change of Name or Address Information" (attached hereto as Form 1-B).  The address provided shall be deemed the "Updated Address" for any such Class Member.

2.5.9. Beginning two (2) weeks after the date the Settlement Documents are mailed, the Claims Administrator shall provide to Class Counsel and counsel for Defendant a weekly status report, which will be cumulative, reflecting the names and the number of Class Members who have filed each of the following:  completed Claim and Consent to Join Settlement Forms, incomplete Claim and Consent to Join Settlement Forms, untimely or incomplete Claim and Consent to Join Settlement Forms, Claim and Consent to Join Settlement Forms returned as undeliverable, and Opt-Out Request Forms.

2.5.10.    In the event that subsequent to the first mailing of the Settlement Documents, prior to the deadline for a response, those Settlement Documents are returned to the Claims Administrator by the United States Postal

Service with a forwarding address for the recipient, the Claims Administrator shall re-mail the Settlement Documents to that address, the Settlement Documents will be deemed mailed as of that date, and the forwarding address shall be deemed the Updated Address for that Class Member.  In the event that subsequent to the first mailing of Settlement Documents, and at least fourteen (14) calendar days prior to the Notice Response Deadline, those Settlement Documents are returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.,* the envelope is marked "Return to Sender," the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Class Member in question.  If such an address is ascertained, the Claims Administrator will re-send the Settlement Documents within ten (10) calendar days of receiving such information.  The Settlement Documents shall be deemed received once it is mailed for the second time, and the Class Member shall have up to and including five (5) calendar days after the Notice Response Deadline to file a Claim and Consent to Join Settlement Form, and file any objection as set forth in Section 2.5.7 above, or in the case of Rule 23 Class Members, to submit an Opt-Out Request Form.

2.5.11.    To the extent a Class Member whose address has not been deemed unknown by the Claims Administrator has not submitted to the Claims Administrator some form of written response to the Settlement Documents by the date that is thirty (30) calendar days before the Notice Response Deadline, the Claims Administrator shall send that Class Member a reminder postcard (a) referencing the name of the Litigation; (b) stating that the Class Member received a Class Notice regarding the settlement of the Litigation; (c) providing the address for the Claims Administrator; (d) stating the Notice Response Deadline, *i.e.*, the deadline to respond to the Class Notice if the recipient desires to do so; and (e) stating that the Class Member can contact the Claims Administrator to receive an additional copy of the Settlement Documents.  The postcard shall not contain additional information or statements.  Nothing in this paragraph shall be construed to extend the Notice Response Deadline for any Class Member, and the reasonable costs expended in association with the preparation and mailing of the postcards contemplated by this paragraph, as well as the costs associated with any notices provided under this Stipulation, shall be included as part of the Administrative Costs as defined herein.

2.5.12.    The    Administrative    Costs    paid    to    the    Claims Administrator by Defendant shall be used to pay for all costs associated with the

above-referenced mailings, as well as the cost of the envelopes in which the Settlement Documents will be mailed, any follow-up postcards, cure letters, the cost of reproducing the Settlement Documents, the cost of postage to send the Settlement Documents and the cost of calculating Settlement Payments.  The Class Representatives acknowledge that Defendant's agreement to pay the claims administration and mailing costs constitutes part of the consideration to the Settlement Class.

2.5.13.    Nothing in this Stipulation is intended to limit Class Counsel from responding to inquiries from Class Members, or to limit the Claims Administrator from referring such inquires to Class Counsel.  The specific terms of the Claims Administrator's authorized efforts to obtain Claim and Consent to Join Settlement Forms from the Class Members (e.g., mailing of reminder post cards, cure letters, additional notices, etc.) will be identified in an instruction sheet agreed upon by Defendant and Class Counsel.

2.6.    *Motion for Final Approval.*

2.6.1. Within ten (10) calendar days after the Notice Response Deadline and prior to the Final Approval and Fairness Hearing described in Section 1.16, and consistent with the rules imposed by the Court, the Class Representatives shall move the Court for entry of the Order of Final Approval

along with the associated entry of Judgment.  The Settling Parties shall make all reasonable efforts to secure entry of the Order of Final Approval and the associated entry of Judgment.  If the Court rejects this Stipulation, fails to enter the Order of Final Approval, or fails to enter the Judgment, this Stipulation shall be void *ab initio,* and Defendant shall have no obligations to make any payments under this Stipulation, except for payment of half of the Administrative Costs already incurred by the Claims Administrator.

2.7.     *Funding of the Settlement Proceeds.*

2.7.1. Within ten (10) business days after the Effective Date, Defendant shall pay into the Qualified Settlement Fund One Million, Five Hundred Seventy-Five Thousand Dollars and No Cents ($1,575,000.00), with the exception of and any monies that will be paid to Class Counsel as set forth in Section 2.7.2 and any monies that will be paid by Maxim directly to the Participating Claimants who were or are employed by Defendant in 2014 as set forth in Section 2.8.1.

2.7.2. Within three (3) business days after the Effective Date, Defendant shall pay to the Qualified Settlement Fund, the amount of attorneys' fees and costs awarded by the Court.

2.8.       *Timing of Payment to Participating Claimants.*

2.8.1. Within fifteen (15) business days after Defendant has made the payment to the Qualified Settlement Fund set forth in Section 2.7.1, the Claims Administrator shall mail to each Participating Claimant at his/her Last Known Address, or Updated Address if obtained, his/her individual Settlement Payment pursuant to Section 2.2 and in accordance with the terms of Sections 2.2.1-2.2.3. With respect to Participating Claimants who were or are employed by Defendant in 2014, Defendant shall deliver checks produced by Defendant's payroll provider to the Claims Administrator for mailing by the Claims Administrator within the same fifteen (15) business days referenced in the previous sentence.

2.8.2. Checks issued to Participating Claimants pursuant to this Stipulation shall remain negotiable for a period of one hundred and eighty (180) calendar days from the date of mailing and the amount of that Participating Claimant's Settlement Payment shall revert to Defendant.  In the event that any settlement checks are returned to the Claims Administrator as non-deliverable, the Claims Administrator will, on a weekly basis, provide Class Counsel with the name of those Participating Claimants.  Class Counsel will then attempt to obtain updated contact information, and will forward that information to the Claims Administrator.  If updated information is located, the Claims Administrator will

reissue (or request a reissued check from the Defendant) and/or mail the settlement check to the Participating Claimant's updated address within one week.   The reissued check shall become void if not negotiated within sixty (60) calendar days of the date of mailing and the amount of that Participating Claimant's Settlement Payment shall revert to Defendant.   Participating Claimants who fail to negotiate their check(s) in a timely fashion shall, like all Settlement Class Members, remain subject to the terms of this Stipulation and Judgment.

2.8.3. Nothing herein shall be construed to prevent the Claims Administrator or Class Counsel (through the Claims Administrator) from contacting Class Members to inform them of the expiration of their Settlement checks.

2.8.4. Following the mailing of the Settlement Payments to Participating Claimants discussed in Section 2.8.1, the Claims Administrator shall provide counsel for the Settling Parties with a written confirmation of this mailing. Upon receipt of this confirmation, Class Counsel will file a notice or acknowledgement of satisfaction of the Judgment with the Court on behalf of the Settlement Class.

2.9.      *Releases.*

2.9.1. Upon the Effective Date, the Class Representatives and each of the Settlement Class Members, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed, with prejudice, relinquished, and discharged all Released Non-FLSA Claims as defined in Section 1.38 herein and in Exhibit 2.

2.9.2. In addition, upon the Effective Date, the Class Representatives and each of the Participating Claimants, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed, with prejudice, relinquished, and discharged all Released FLSA Claims as defined in Section 1.37 herein.

2.9.3. Rule 23 Class Members who do not submit a timely and valid Claim and Consent to Join Settlement Form are not subject to the Released FLSA Claims.

2.9.4. With respect to the Released FLSA Claims and Released Non-FLSA Claims, and subject to Sections 2.9.1 and 2.9.2, the Class Representatives and each of the Settlement Class Members who worked in California shall be

deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had pursuant to Section 1542 of the California Civil Code, which provides as follows:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.*

2.9.5. The above releases given are conditional and shall only take effect unconditionally upon the Effective Date.

2.9.5.1.    If any settlement checks have not been cashed by the 180 day threshold, the Claims Administrator shall cause the Qualified Settlement Fund to revert any remaining amounts to the Defendant.

2.10. *Payment of Attorneys' Fees and Costs and Enhancement Awards.*

2.10.1.    Not more than twenty-seven (27) calendar days in advance of the Final Approval and Fairness Hearing, and subject to Court approval, Class Counsel shall apply to the Court for an award of reasonable attorneys' fees not to exceed 30% of the Maximum Settlement Amount and costs. All attorneys' fees and costs shall be obtained solely from the Qualified Settlement Fund as an amount included within the Maximum Settlement Amount.  Defendant

will not oppose Class Counsel's request for attorneys' fees and costs.  Any Court-approved payments made pursuant to this paragraph shall be made by the Claims Administrator from the Qualified Settlement Fund in accordance with Section 2.10.4 and shall constitute full satisfaction of any claim for attorneys' fees or costs related to the Litigation or this Stipulation, and the Class Representatives and Class Counsel, on behalf of themselves and all Settlement Class Members, agree that they shall neither seek nor be entitled to any additional attorneys' fees or costs under any theory.  The Class Representatives and Class Counsel agree that they shall be responsible for justifying the amount of the attorneys' fees and costs payment to the Court, and they agree to submit, as appropriate, the necessary materials to justify this payment along with the Settling Parties' Joint Motion for Final Approval of this Stipulation pursuant to Section 2.6.1.

2.10.2.    The Enhancement Awards will, subject to Court approval, be paid by the Claims Administrator in amounts not to exceed $2,500 for Ryan Stelmachers and $1,000 each for Anna Aguirre, Joshua Alderoty, Robert Arecchi, Michael Bonds, Peter Casper, Lauren Dudoit, Vanessa Dupoux, Kevin Fahey Jr., Ryan Ferguson, Gennaro Fiore, Matthew Homsy, Emily MacNaughton, Jason Morell, Melissa Mueller, Keith O'Halloran, Tyson Seabaugh, Michael Shaw, Mark Teague, John Ward, and Darek Wheatley (or other Settlement Class

Members agreed upon by the Settling Parties) for service and assistance to the Class.  All Enhancement Awards shall be obtained from the Maximum Settlement Amount.   Because the Enhancement Awards represent payment to the Class Representatives (or other Settlement Class Members agreed upon by the Settling Parties) for service to the Class Members and consideration for the Released FLSA Claims and the Released Non-FLSA Claims, taxes will not be withheld from the Enhancement Awards.   The Claims Administrator will cause the Qualified Settlement Fund to report the Enhancement Awards on a Form 1099, and any other required tax forms, and will provide the required forms to the Class Representatives (or other Settlement Class Members agreed upon by the Settling Parties) and to the pertinent taxing authorities as required by law.   The Class Representatives (or other Settlement Class Members agreed upon by the Settling Parties) assume full responsibility for paying all taxes, federal and state, if any, due as a result of the Enhancement Awards and each agree to indemnify and hold harmless Defendant and the Qualified Settlement Fund for any such taxes owed by him or her.  The Claims Administrator shall cause any amount of the Enhancement Awards that is not awarded by the Court to revert to the Net Settlement Amount.

2.10.3.     In the event the Court (or any appellate court) awards less than the amount requested for attorneys' fees and/or costs, or less than the

amount requested for Enhancement Awards for Class Representatives (or other Settlement Class Members agreed upon by the Settling Parties), only the awarded amounts shall be paid and shall constitute satisfaction of the obligations of this paragraph and full payment hereunder.  Any remaining or unawarded portion of the requested attorneys' fees, costs, and/or Enhancement Awards shall revert to the Net Settlement Amount.

        2.10.4.     As a condition of the Claims Administrator distributing any attorneys' fees and costs to Class Counsel from the Qualified Settlement Fund, Class Counsel shall provide to Defendant's counsel no later than two (2) business days after the Effective Date an executed statement authorizing the distribution of all attorneys' fees and costs solely to SOMMERS SCHWARTZ, P.C. pursuant to the terms in this Stipulation ("Statement").  If this condition is not met, the Claims Administrator shall hold the full amount of any awarded attorneys' fees and costs until five (5) business days after the Statement is received by Defendant's counsel. This Statement and any dispute regarding attorneys' fees and costs shall in no way delay the Final Judgment or any other payments under this Stipulation, with the exception of the distribution of attorneys' fees and costs.  To the extent that this Stipulation and/or any other associated documents, proposed orders, or exhibits purportedly conflict with this paragraph, this paragraph shall govern.   If the

Effective Date occurs, and the above condition is met, the Claims Administrator shall wire SOMMERS SCHWARTZ, P.C. the total payment amount awarded by the Court under Section 2.10.1, within five (5) business days, provided, however, that Class Counsel must provide the Claims Administrator with the pertinent taxpayer identification number(s) in a Form W-9 on or before the Effective Date. SOMMERS SCHWARTZ, P.C. shall be responsible for distributing any awarded attorneys' fees and costs among Class Counsel.

        2.10.5.      Other than any reporting of the payment of attorneys' fees and costs and Enhancement Awards as required by this Stipulation or by law (which will be made by the Claims Administrator on behalf of the Qualified Settlement Fund), Class Counsel and the Class Representatives (or other Settlement Class Members agreed upon by the Settling Parties) shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment that they have received pursuant to this paragraph and all of its subparts.  The Claims Administrator shall include with the settlement check to each Participating Claimant a disclosure of the amount of attorneys' fees and costs allocated to each Participating Claimant based on his/her proportionate share of the settlement.  Class Counsel agrees to pay and indemnify and hold Defendant and the Qualified Settlement Fund harmless for any taxes due

or owing by them related to attorneys' fees and costs paid by Defendant pursuant to this Stipulation and for any required reporting under federal, state, and/or local law.  The Settling Parties shall agree on Enhancement Awards, if any, to be offered to any other Settlement Class Members, the amount of such payments, and any conditions under which such payments will be paid.  Any Enhancement Awards agreed to under this provision shall be paid after the Effective Date by the Claims Administrator in conjunction with the other Settlement Payments.

2.10.6.    Defendant  shall  report  any  Enhancement  Award payments as non-wage income in the year of payment consistent with Section 2.10.2 above.

2.11.  *Claims Administrator.*

2.11.1.    Maxim  shall  pay  the  Claims  Administrator  for  any Administrative Costs reasonably incurred by the Claims Administrator as a result of procedures and processes expressly required by this Stipulation, including with the administration of the Qualified Settlement Fund.

2.11.2.    Absent  any  agreement,  either  Class  Counsel  or Defendant may communicate with the Claims Administrator with or without notice and/or copies to Class Counsel, except that notice will be provided if a question pertains to both parties or a dispute arises that Defendant cannot resolve.

2.11.3.      In the event that either Defendant or Class Counsel take the position that the Claims Administrator is not acting in accordance with the terms of this Stipulation, such party shall meet and confer with opposing counsel prior to raising any such issue with the Claims Administrator or the Court.

2.12. *Termination of Settlement.*

2.12.1.      In the event this Stipulation is not approved in its entirety as is by the Court, excluding modifications that Defendant determines in its reasonable and good faith judgment to not be material modifications, or in the event that the Settlement set forth in this Stipulation is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment, or if the Effective Date does not occur, no payments shall be made by Defendant to anyone, including the Qualified Settlement Fund, in accordance with the terms of this Stipulation, and the Settling Parties will each bear their own costs and fees with regard to the efforts to obtain Court approval.  In such event, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in Sections I, IV, 2.13.4, and 2.13.5 and those provisions relating to the return of documents and discovery set forth in 2.14) shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Settling Parties and shall

not be used in the Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc.*  Notwithstanding any other provision of this Stipulation, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid by Defendant to Class Counsel, or reducing the amount of any Enhancement Awards paid to the Class Representatives (or other Settlement Class Members), shall constitute grounds for cancellation or termination of this Stipulation or grounds for limiting any other provision of the Judgment.

2.12.2.    Defendant shall have the absolute discretionary right to terminate this Settlement and the terms set forth in this Stipulation in the event that any of the following conditions occur in 2.12.2.1 through 2.12.2.4:

2.12.2.1.    In the event that this Stipulation is construed in such a fashion that would require Defendant to pay:  (i) more than the Maximum Settlement Amount; (ii) any amount(s) not expressly provided for in Section VI of this Stipulation;

2.12.2.2.    In the event that the Court does not certify, for settlement purposes only, a class action and collective action consistent with Section 2.1.1, or otherwise makes an order materially inconsistent with any of the

terms of this Stipulation or the Settlement Documents prepared to effectuate the Settlement;

        2.12.2.3.    In the event that any court, prior to the Court's Order of Final Approval, whether on a conditional basis or not, certifies a class or collective action that involves any claim, whether based on statute, regulation, contract, common law, or otherwise, included in the Released FLSA Claims or Released Non-FLSA Claims, as those terms are defined in Sections 1.37 and 1.38 herein and Exhibit 2.  However, the parties agree to cooperate to oppose any attempted effort by any individual to obtain conditional or class certification covering any of the Class Members who are the subject of this Stipulation;

        2.12.2.4.    In the event that any Class Representative or Class Counsel breaches this Stipulation.

        2.12.3.    To the extent Defendant chooses to exercise the right to terminate this Stipulation established in Section 2.12.2 and its subsections, it must do so through written notice to Class Counsel prior to the Order of Final Approval and within twenty-one (21) calendar days of Defendant learning of the occurrence of the operative condition warranting termination.

        2.12.4.    In the event the Settlement set forth in this Stipulation is terminated, cancelled, declared void, or fails to become effective in accordance

with its terms, or if the Judgment does not become a Final Judgment, or if the Effective Date does not occur, notwithstanding any of the provisions of this Section 2.12 and all its subsections, the Litigation may proceed without prejudice as if this settlement had not been entered. Furthermore, in any such event, if the class and/or collective action described in Section 2.1 has already been certified for settlement purposes, the Settling Parties will jointly move, as soon as practicable, to decertify without prejudice the class and/or collective actions that were certified as part of this Stipulation, except for FLSA claim in this Litigation actions, which previously was conditionally certified during the Litigation separate and apart from this Stipulation. Should litigation of the Litigation recommence, Defendant expressly reserves the right to move to decertify any previously conditionally certified actions in accordance with applicable law.

2.13. *Miscellaneous Provisions.*

2.13.1. The only Class Members entitled to any Settlement Payment under this Stipulation and the associated Judgment are Participating Claimants, and they shall be entitled to their individual Settlement Payments pursuant to Section 2.2 only.

2.13.2. Defendant's sole obligations to Class Counsel and the Claims Administrator are set forth in this Stipulation. Class Counsel and the

Claims Administrator shall not seek to recover any fees or costs awarded in excess of the terms in this Stipulation.

2.13.3.    The Settling Parties (a) acknowledge it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation, including but not limited to obtaining the dismissal, transfer to the Court, or stay of any pending or subsequently-filed class, collective action lawsuit that alleges any of the Released FLSA Claims and Released Non-FLSA Claims, or qualification of the Qualified Settlement Fund as a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, *et. seq*.

2.13.4.    This Stipulation compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or any potential defense.  The Settling Parties agree that the amounts paid in connection with this Stipulation and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.

2.13.5.     Defendant specifically and generally denies any and all liability or wrongdoing of any sort with regard to any of the claims asserted in the Litigation and makes no concessions or admissions of liability of any sort.  Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, this Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Non-FLSA Claim or Released FLSA Claim, or of any wrongdoing or liability of the Defendant Releasees, or the waiver of any defenses by Defendant for any purpose, or any of them; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Defendant Releasees, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal for any reason.

2.13.6.     All of the exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

2.13.7.     This Stipulation may be amended or modified only by a written instrument signed by authorized representatives of all Settling Parties or their respective successors-in-interest.

2.13.8.     This Stipulation constitutes the entire agreement among the Settling Parties hereto regarding the subject matter discussed herein, and no

representations, warranties, or inducements have been made to any party concerning this Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise explicitly provided herein, each Settling Party shall bear its own fees and costs.

2.13.9.   Class Counsel, on behalf of the Class Members, represent that, after consultation with and approval by all of the Class Representatives, they are expressly authorized by the Class Representatives to take all appropriate action required or permitted to be taken by the Class Representatives pursuant to this Stipulation to effect its terms, and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class Members which they deem appropriate.  Similarly, Defendant's counsel represents that it is expressly authorized to take all appropriate action required or permitted to be taken by Defendant pursuant to this Stipulation to effect its terms, and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of Defendant which they deem appropriate.

2.13.10.  Each counsel or other person executing this Stipulation or any of its exhibits on behalf of any Party hereto hereby warrants that such person has the full authority to do so.

2.13.11. This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

2.13.12.  Whenever this Stipulation requires or contemplates that one Party, the Court or the Claims Administrator shall or may give notice to another, notice shall be provided by facsimile and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

(i) If to Defendant, then to:

Robert J. Smith
Joyce E. Taber
Morgan, Lewis & Bockius  LLP
1111 Pennsylvania Ave. N.W.
Washington D.C. 20004
Facsimile:  202-739-3001


(ii)  If to Class Representatives, then to:

SOMMERS SCHWARTZ, P.C.
Jason J. Thompson
One Towne Square, Suite 1700
Southfield, Michigan 48076
Facsimile: (248) 436-8453

2.13.13.  This Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns; but this Stipulation is not designed to and does not create any third party beneficiaries, either express or implied.

2.13.14.  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation, including the Court's continuing jurisdiction over the Qualified Settlement Fund within the meaning of Treas. Reg. §1.468B-1, et. seq.  Any action to enforce this Stipulation shall be commenced and maintained only in the Court.

2.13.15.  The Settling Parties agree and understand that there shall be no injunctive relief included as part of any Court Order as to them.

2.13.16.  This Stipulation and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Georgia, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of Georgia without giving effect to that State's choice of law principles.

2.13.17.  The language of all parts of this Stipulation shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either Party.  No Party shall be deemed the drafter of this Stipulation.  The parties acknowledge that the terms of this Stipulation are contractual and are the product of arms-length negotiations between the parties and their counsel.  Each Party and their counsel cooperated in the drafting and preparation of this Stipulation.  In any construction to be made of this Stipulation, this Stipulation shall not be construed against any party and the canon of contract interpretation set forth in California Civil Code §1654 shall not be applied.

2.13.18.  Other than necessary disclosures made to a court, the Class Representatives, Defendant, and their respective counsel and other agents agree to keep the fact of Settlement, this Stipulation and any attached documents, and their Settlement negotiations confidential and will not disclose that information to any third party (including the press or inclusion on any websites) until such time as the Class Representatives and Defendant move for preliminary approval of this Stipulation or otherwise agree in writing.

2.13.19.  After the Court enters a Preliminary Approval Order, Class Representatives, Class Counsel and their agents may communicate with Class Members provided that such communications are accessible only to Class

Members; however, they shall issue no statements to the press, any other media, or to any third party regarding this Settlement or this Stipulation, including but not limited to communications on web sites or other social media, except as specifically set forth in 2.13.21 below.

   2.13.20. Each Participating Claimant shall refrain from making any disparaging oral or written statements concerning the Defendant. Each Participating Claimant shall also refrain from taking any action, directly or indirectly, which he/she knows or reasonably should know to be disparaging concerning Defendant. Each Participating Claimant's promises in this subparagraph include that they will not make any statements to the press, media, web sites or other social media regarding the Settlement or this Stipulation. Each Participating Claimant's promises in this subsection, however, shall not apply to any judicial or administrative proceeding in which such Participating Claimant is a party or has been subpoenaed to testify under oath by a government agency or by any third party.

   2.13.21. After the Effective Date, Class Counsel may post on their firm's web site and submit to Michigan Lawyers' Weekly a statement that has been approved by Maxim. Class Counsel, other than the above-referenced pre-approved statement, shall refrain from making any disparaging oral or written statements

concerning the Defendant and will issue no statements to the press, any other media, or to any third party regarding this Settlement or this Stipulation, including but not limited to communications on social media.

2.13.22.   The Class Representatives, by signing this Stipulation, are bound by the terms herein and further agree not to request to be excluded from the Settlement and not to object to any terms of this Stipulation.  Any such request for exclusion or objection shall therefore be void and of no force or effect.  Defendant, Class Counsel, and the Class Representatives waive their rights to file an appeal, writ, or any challenge whatsoever to the terms of this Stipulation, except that Class Representatives and Class Counsel have the right to appeal any order denying, in whole or in part, an application for the award of attorney's fees and costs and/or an Enhancement Award.

2.13.23.   Neither Class Counsel nor any other attorneys acting for, or purporting to act for, the Class Representatives or the Class, may recover or seek to recover any amounts for attorneys' fees, costs, or other disbursements from the Maximum Settlement Amount or otherwise from the Defendant Releasees except as expressly provided herein.

2.13.24.   This Stipulation may not be changed, altered, or modified, except in writing signed by the Parties hereto and approved by the Court.  This

Stipulation may not be discharged except by performance in accordance with its terms or by a writing used by the Parties hereto.

2.13.25.  Because the proposed Class has not yet been certified, and the members of the proposed Class are so numerous, the Parties agree that it is impossible or impractical to have each Class Member sign this Stipulation.  It is agreed that, for purposes of seeking approval of the Class Settlement, this Stipulation may be executed on behalf of the proposed Class by the Class Representatives and Class Counsel.

2.13.26.  Paragraph titles or captions contained in this Stipulation are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Stipulation, or any provision thereof.

2.14.  *Return of All Documents and Other Discovery.*

2.14.1.   No discovery materials shall be disseminated or distributed to any person or entity by any Class Representative or Class Counsel.  All originals or reproductions of any discovery materials obtained from Defendant and/or given to any party, expert, consultant, or other person shall be retrieved by Class Counsel and destroyed, and Class Counsel shall certify within thirty (30) calendar days of the Effective Date that they have destroyed all such documents or information and all copies thereof.

2.14.2.   This provision and the provisions of Section 2.14.1 are not intended to cover work product produced by Class Counsel, but are intended to cover any documents or other materials described herein that are attached to any work product and all such documents or materials attached to work product shall be destroyed as set forth above.   All such documents, information or materials incorporated into any work product shall be excised as well.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed.

Executed this ⁵____ day of May, 2014 by:

_____

RYAN STELMACHERS

Executed this ____ day of May, 2014 by:

_____

ANNA AGUIRRE

Executed this ____ day of May, 2014 by:

_____

JOSHUA ALDEROTY

Executed this ____ day of May, 2014 by:

_____

ROBERT ARECCHI

Executed this ____ day of May, 2014 by:

_____

MICHAEL BONDS

Executed this ____ day of May, 2014 by:

_____

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed.

Executed this _____ day of May, 2014 by:

_____

RYAN STELMACHERS

Executed this _5___ day of May, 2014 by:

_____

ANNA AGUIRRE

Executed this _____ day of May, 2014 by:

_____

JOSHUA ALDEROTY

Executed this _____ day of May, 2014 by:

_____

ROBERT ARECCHI

Executed this _____ day of May, 2014 by:

_____

MICHAEL BONDS

Executed this _____ day of May, 2014 by:

_____

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed.

Executed this _____ day of May, 2014 by:

_____

RYAN STELMACHERS

Executed this _____ day of May, 2014 by:

_____

ANNA AGUIRRE

Executed this _6___ day of May, 2014 by:

_____

JOSHUA ALDEROTY

Executed this _____ day of May, 2014 by:

_____

ROBERT ARECCHI

Executed this _____ day of May, 2014 by:

_____

MICHAEL BONDS

Executed this _____ day of May, 2014 by:

_____

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed.

Executed this ____ day of May, 2014 by:

_____

RYAN STELMACHERS

Executed this ____ day of May, 2014 by:

_____

ANNA AGUIRRE

Executed this ____ day of May, 2014 by:

_____

JOSHUA ALDEROTY

Executed this _8___ day of May, 2014 by:

_____

ROBERT ARECCHI

Executed this ____ day of May, 2014 by:

_____

MICHAEL BONDS

Executed this ____ day of May, 2014 by:

_____

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed.

Executed this _____ day of May, 2014 by:

_____

RYAN STELMACHERS

Executed this _____ day of May, 2014 by:

_____

ANNA AGUIRRE

Executed this _____ day of May, 2014 by:

_____

JOSHUA ALDEROTY

Executed this _____ day of May, 2014 by:

_____

ROBERT ARECCHI

Executed this _08__ day of May, 2014 by:

_____

MICHAEL BONDS

Executed this _____ day of May, 2014 by:

_____

70

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed.

Executed this \_\_\_\_ day of May, 2014 by:

_____

RYAN STELMACHERS

Executed this \_\_\_\_ day of May, 2014 by:

_____

ANNA AGUIRRE

Executed this \_\_\_\_ day of May, 2014 by:

_____

JOSHUA ALDEROTY

Executed this \_\_\_\_ day of May, 2014 by:

_____

ROBERT ARECCHI

Executed this \_\_\_\_ day of May, 2014 by:

_____

MICHAEL BONDS

Executed this _05_ day of May, 2014 by:

_____

70

PETER CASPER

Executed this <u>5th</u> day of May, 2014 by:

_____

LAUREN DUDOIT

Executed this _____ day of May, 2014 by:

_____

VANESSA DUPOUX

Executed this _____ day of May, 2014 by:

_____

KEVIN FAHEY, JR.

Executed this _____ day of May, 2014 by:

_____

RYAN FERGUSON

Executed this _____ day of May, 2014 by:

_____

GENNARO FIORE

Executed this _____ day of May, 2014 by:

_____

MATHEW HOMSY

PETER CASPER

Executed this _____ day of May, 2014 by:

_____

LAUREN DUDOIT

Executed this _6__ day of May, 2014 by:

_____

VANESSA DUPOUX

Executed this _____ day of May, 2014 by:

_____

KEVIN FAHEY, JR.

Executed this _____ day of May, 2014 by:

_____

RYAN FERGUSON

Executed this _____ day of May, 2014 by:

_____

GENNARO FIORE

Executed this _____ day of May, 2014 by:

_____

MATHEW HOMSY

PETER CASPER

Executed this _____ day of May, 2014 by:

_____

LAUREN DUDOIT

Executed this _____ day of May, 2014 by:

_____

VANESSA DUPOUX

Executed this 5th day of May, 2014 by:

_____

KEVIN FAHEY, JR.

Executed this _____ day of May, 2014 by:

_____

RYAN FERGUSON

Executed this _____ day of May, 2014 by:

_____

GENNARO FIORE

Executed this _____ day of May, 2014 by:

_____

MATHEW HOMSY

71

PETER CASPER

Executed this _____ day of May, 2014 by:

_____

LAUREN DUDOIT

Executed this _____ day of May, 2014 by:

_____

VANESSA DUPOUX

Executed this _____ day of May, 2014 by:

_____

KEVIN FAHEY, JR.

Executed this 9____ day of May, 2014 by:

_Ryan Ferguson_____

RYAN FERGUSON

Executed this _____ day of May, 2014 by:

_____

GENNARO FIORE

Executed this _____ day of May, 2014 by:

_____

MATHEW HOMSY

PETER CASPER

Executed this _____ day of May, 2014 by:

_____

LAUREN DUDOIT

Executed this _____ day of May, 2014 by:

_____

VANESSA DUPOUX

Executed this _____ day of May, 2014 by:

_____

KEVIN FAHEY, JR.

Executed this _____ day of May, 2014 by:

_____

RYAN FERGUSON

Executed this _06__ day of May, 2014 by:

_____Gennaro Fiore_____

GENNARO FIORE

Executed this _____ day of May, 2014 by:

_____

MATHEW HOMSY

PETER CASPER

Executed this _____ day of May, 2014 by:

_____

LAUREN DUDOIT

Executed this _____ day of May, 2014 by:

_____

VANESSA DUPOUX

Executed this _____ day of May, 2014 by:

_____

KEVIN FAHEY, JR.

Executed this _____ day of May, 2014 by:

_____

RYAN FERGUSON

Executed this _____ day of May, 2014 by:

_____

GENNARO FIORE

Executed this __9__ day of May, 2014 by:

_____

MATHEW HOMSY

71

Executed this 5___ day of May, 2014 by:

_____

EMILY MACNAUGHTON

Executed this ____ day of May, 2014 by:

_____

MELISSA MUELLER

Executed this ____ day of May, 2014 by:

_____

JASON MORELL

Executed this ____ day of May, 2014 by:

_____

KEITH O'HALLORAN

Executed this ____ day of May, 2014 by:

_____

TYSON SEABAUGH

Executed this ____ day of May, 2014 by:

_____

MICHAEL SHAW

Executed this _____ day of May, 2014 by:

_____

EMILY MACNAUGHTON

Executed this _6th_ day of May, 2014 by:

_____

MELISSA MUELLER

Executed this _____ day of May, 2014 by:

_____

JASON MORELL

Executed this _____ day of May, 2014 by:

_____

KEITH O'HALLORAN

Executed this _____ day of May, 2014 by:

_____

TYSON SEABAUGH

Executed this _____ day of May, 2014 by:

_____

MICHAEL SHAW

Executed this _____ day of May, 2014 by:

_____

EMILY MACNAUGHTON

Executed this _____ day of May, 2014 by:

_____

MELISSA MUELLER

Executed this 8 ____ day of May, 2014 by:

_____

JASON MORELL

Executed this _____ day of May, 2014 by:

_____

KEITH O'HALLORAN

Executed this _____ day of May, 2014 by:

_____

TYSON SEABAUGH

Executed this _____ day of May, 2014 by:

_____

MICHAEL SHAW

Executed this _____ day of May, 2014 by:

_____

EMILY MACNAUGHTON

Executed this _____ day of May, 2014 by:

_____

MELISSA MUELLER

Executed this _____ day of May, 2014 by:

_____

JASON MORELL

Executed this _05__ day of May, 2014 by:

_____

KEITH O'HALLORAN

Executed this _____ day of May, 2014 by:

_____

TYSON SEABAUGH

Executed this _____ day of May, 2014 by:

_____

MICHAEL SHAW

Executed this _____ day of May, 2014 by:

_____

                              EMILY MACNAUGHTON

Executed this _____ day of May, 2014 by:

_____

                              MELISSA MUELLER

Executed this _____ day of May, 2014 by:

_____

                              JASON MORELL

Executed this _____ day of May, 2014 by:

_____

                              KEITH O'HALLORAN

Executed this _8___ day of May, 2014 by:

_____

                              TYSON SEABAUGH

Executed this _____ day of May, 2014 by:

_____

                              MICHAEL SHAW

Executed this _____ day of May, 2014 by:

_____

EMILY MACNAUGHTON

Executed this _____ day of May, 2014 by:

_____

MELISSA MUELLER

Executed this _____ day of May, 2014 by:

_____

JASON MORELL

Executed this _____ day of May, 2014 by:

_____

KEITH O'HALLORAN

Executed this _____ day of May, 2014 by:

_____

TYSON SEABAUGH

Executed this 8____ day of May, 2014 by:

_____

MICHAEL SHAW

Executed this <u>6</u>___ day of May, 2014 by:

_____

MARK TEAGUE

Executed this _____ day of May, 2014 by:

_____

JOHN WARD

Executed this _____ day of May, 2014 by:

_____

DAREK WHEATLEY

Executed this _____ day of May, 2014 by:

_____

MARK TEAGUE

Executed this _9___ day of May, 2014 by:

_____

JOHN WARD

Executed this _____ day of May, 2014 by:

_____

DAREK WHEATLEY

Executed this _____ day of May, 2014 by:

_____

               MARK TEAGUE

Executed this _____ day of May, 2014 by:

_____

               JOHN WARD

Executed this _5th_ day of May, 2014 by:

_____

               DAREK WHEATLEY

Executed this _____ day of May, 2014 by:

_____

for Maxim Healthcare Services, Inc.

Print Name: _Toni·Jean Lisa_

Title: _Vice President, General Counsel, Secretary_

Approved as to form and substance:       Approved as to form and substance:


_____/s/_____               _____/s/_____
SOMMERS SCHWARTZ, P.C.                   MORGAN, LEWIS & BOCKIUS LLP
Jason J. Thompson                        Robert J. Smith
One Towne Square, Suite 1700            Joyce E. Taber
Southfield, Michigan 48076              1111 Pennsylvania Ave. N.W.
Phone: (248) 355-0300                   Washington, D.C. 20004
                                        Phone: (202) 739-3000


Dated:  May 2, 2014                     Dated:  May 2, 2014


Attorneys for Class Representatives      Attorneys for Defendant
and Class Members