## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

**RYAN STELMACHERS,**
**ANNA AGUIRRE, JOSHUA**
**ALDEROTY, ROBERT ARECCHI,**
**MICHAEL BONDS, PETER CASPER,**          Civil Action No. 1:13-CV-1062
**LAUREN DUDOIT, VANESSA DUPOUX,**
**KEVIN FAHEY, JR., RYAN FERGUSON,**      Hon. Robert Vining, Jr.
**GENNARO FIORE, MATHEW HOMSY,**
**EMILY MACNAUGHTON, MELISSA**
**MUELLER, JASON MORELL, KEITH**
**O'HALLORAN, TYSON**
**SEABAUGH, MICHAEL SHAW,**
**MARK TEAGUE, JOHN WARD,**
**AND DAREK WHEATLEY,**
individually and on behalf of
all similarly situated individuals,

       Plaintiffs,

vs.

**MAXIM HEALTHCARE SERVICES,**
**INC.**, a Maryland Corporation,

       Defendant.

_____

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
## SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS

Plaintiffs Ryan Stelmachers, Anna Aguirre, Joshua Alderoty, Robert Arecchi,

Michael Bonds, Peter Casper, Lauren Dudoit, Vanessa Dupoux, Kevin Fahey Jr.,

Ryan Ferguson, Gennaro Fiore, Emily MacNaughton, Jason Morell, Keith

O'Halloran, Tyson Seabaugh, Michael Shaw, Mark Teague, John Ward, and Darek

Wheatley, all individually and on behalf of all other similarly situated employees

(hereinafter collectively referred to as "Plaintiffs" or "Named Plaintiffs") file this Motion for Final Approval of Settlement and Certification of the Settlement Class ("Final Approval Motion") and, in support, state as follows:

# I.    <u>INTRODUCTION</u>

Plaintiffs seek final approval of a $1,575,000 settlement (the "Settlement") covering various settlement classes of current and former salaried Homecare Recruiters who worked for Defendant Maxim Healthcare Services, Inc. (hereinafter, "Defendant" or "Maxim") in branch Homecare offices throughout the United States during the relevant statutory time periods ("Homecare Recruiters"). The settled claims pertain to the classification of the Homecare Recruiter position under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.* and the analogous state wage and hour laws of California, Connecticut, Illinois, Massachusetts, Maryland, Missouri, Nevada, New York, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, and Washington.

This Court granted preliminary approval of the Settlement on April 30, 2014.  (Dkt. 112).  The key terms of the Settlement preliminarily approved by this Court, and for which final approval is now requested, include the following:

1.      Defendant's agreement to pay a fixed sum up to One Million Five Hundred Seventy-Five Thousand and 00/100 ($1,575,000.00) dollars  (the

"Maximum Settlement Amount") to resolve all disputes and differences between Plaintiffs and Maxim up to the date of "Final Approval."

 2. Certification of the following classes:[1]

 a. **Rule 23 Classes**

All current and former salaried Homecare Recruiters in New York at any time six (6) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Oregon at any time six (6) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in California at any time four (4) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Illinois at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Maryland at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Pennsylvania at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Washington at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Connecticut at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

---

[1] For simplicity, these classes are often referred to collectively as the "Settlement Class" throughout this motion.  Similarly, the members of each class are referred to as "Class Members".  Generally, capitalized terms refer to terms defined in the attached Stipulation and Settlement Agreement.  (See attachment 3).  As set forth in the parties' Stipulation and Settlement Agreement, the Class definitions exclude any Homecare Recruiters who are wholly barred by any applicable court-approved settlement.

All current and former salaried Homecare Recruiters in Massachusetts at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Missouri at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Nevada at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in New Jersey at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in North Carolina at any time two (2) years prior to the date of the Order Granting Preliminary Approval; and

All current and former salaried Homecare Recruiters in Ohio at any time two (2) years prior to the date of the Order Granting Preliminary Approval.

b. **FLSA Collective Action Class**

All current and former salaried Homecare Recruiters who were employed by Maxim Healthcare Services, Inc. at any time during the applicable two (2)-year statutory period and who filed an opt-in form at the time of the motion for Preliminary Approval, and any Rule 23 Class Members who filed a timely and valid Claim and Consent to Join Settlement Form in accordance with the terms of the Stipulation and Class Notice.

3.     Payment of an enhancement award to Named Plaintiff Ryan Stelmachers in the amount of $2,500.00 and to all other Named Plaintiffs in the amount of $1,000.00 each.   The total incentive awards to all Named Plaintiffs/Class Representatives amount to $22,500.

4.     Payment of attorneys' fees and costs to Sommers Schwartz, P.C. and Johnson Becker, P.L.L.C. ("Class Counsel"). Class Counsel's application for

attorneys' fees in the amount of thirty percent (30%) of the Maximum Settlement Amount, or $472,500.00 plus an amount not to exceed $12,500.00 for litigation expenses was filed on August 1, 2014.  Dkt. 116.

5.      Payment from Maxim to Rust Consulting, Inc. ("Rust") for the work it performed, and continues to perform, as the Claims Administrator.

6.      Maxim will make a payment of $2,500 to the California Labor and Workforce Development Agency (the "LWDA"), which will be paid separately by Maxim.

7.      There is no reversion of any settlement monies, other than funds relating to uncashed checks, which will revert back to Maxim within one hundred eighty (180) days from mailing.

8.      As shown below, the Settlement is fair, reasonable, and confers a substantial benefit upon the Settlement Class.  The Settlement resolves a complex case and permits these proceedings to conclude after 1.5 years of litigation. The Settlement, including those provisions applicable to the notice process and claims administration has been diligently implemented since preliminary approval.  The reaction of the Class Member has been very positive and approximately 255 individuals representing approximately 20,865.14 workweeks made the choice to participate.  *See* Declaration of Cory LeFebvre on behalf of Rust (LeFebvre Dec.) at ¶¶ 13 and 16, attached as *Exhibit A*.  No individuals objected to the terms of the

Settlement and only one (1) individual elected to opt-out by submitting a timely and valid opt-out form. *Id.* at ¶¶ 17-18. The average individual payout to Class Members is approximately $3,488.56 and the highest claim paid is approximately $14,910.04. *Id.* at ¶ 16. Moreover, because the settlement is non-reversionary, the value of each workweek to the Class Members increased from approximately $31.72 to approximately $51.16. *Id.* Because all the applicable standards for final approval under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e) are satisfied, Plaintiffs request that the Court enter an order granting final approval of the terms of the Settlement. A proposed Order is attached hereto as *Exhibit B*.

## II.   <u>OVERVIEW</u>

This $1,575,000.00 settlement resolves all current and potential litigation concerning the classification of Maxim's salaried Homecare Recruiter position arising out of the facts and claims as set forth in the Second Amended Complaint. (Dkt. 114). It provides finality and certainty to a disputed claim that existed between the parties leading up to and during the over one year of litigation. This settlement was reached after over a year of hard-fought litigation and five months of exhaustive negotiations conducted by the parties. It was only reached through arm's length bargaining by competent counsel with class action and extensive wage and hour experience, and a high level of familiarity and understanding of the relevant facts and legal issues applicable to the case. All of the parties' hard work

culminated in the Settlement being preliminarily approved by this Court on April 30, 2014. (Dkt. 112).  The Settlement participation rate and amounts paid to Class Members are in line with the parties' expectations.  For all of these reasons, the parties believe that the Settlement is fair and reasonable and in the best interests of the Class Members and, under the applicable settlement authorities, ripe for final approval.

## III.   THE SETTLEMENT

The terms of the Settlement were set forth in great detail in the Motion for Preliminary Approval (Dkt. 113) and the Motion for Approval of Attorneys' Fees and Costs (Dkt. 116). A summary of those terms follows:

### 1.   DESCRIPTION OF THE FINAL SETTLEMENT CLASSES UNDER THE FLSA AND FED. R. CIV. P. 23

In accordance with 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and the terms of the Settlement, the following classes should be given final approval by this Court:

#### a.   Rule 23 Classes

All current and former salaried Homecare Recruiters in New York at any time six (6) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Oregon at any time six (6) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in California at any time four (4) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Illinois at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Maryland at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Pennsylvania at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Washington at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Connecticut at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Massachusetts at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Missouri at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Nevada at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in New Jersey at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in North Carolina at any time two (2) years prior to the date of the Order Granting Preliminary Approval; and

All current and former salaried Homecare Recruiters in Ohio at any time two (2) years prior to the date of the Order Granting Preliminary Approval.

### b.    FLSA Collective Action Class

All current and former salaried Homecare Recruiters who were employed by Maxim Healthcare Services, Inc. at any time during the applicable two (2)-year statutory period and who filed an opt-in form at the time of the motion for Preliminary Approval, and any Rule 23 Class Members who filed a timely and

valid Claim and Consent to Join Settlement Form in accordance with the terms of the Stipulation and Class Notice.

## 2.     SETTLEMENT AMOUNT AND RELEASE

The proposed settlement obligates Defendant to pay a maximum potential settlement amount of $1,575,000.00, which is "all inclusive."   Except as specifically set forth below, under no condition will Defendant's liability for payments exceed this amount.  All claims submitted by members of each Class set forth above based on their weeks worked, and all attorneys' fees, costs, and enhancement awards shall be paid out of the Maximum Settlement Amount.

In addition to the Maximum Settlement Amount, Defendant, through the Claims Administrator, shall be responsible for withholding and remitting, all required employer-paid withholding and payroll taxes and similar expenses (including state and federal income taxes, social security contributions and unemployment taxes), including Federal Unemployment Tax Act ("FUTA") and the employer's share of Federal Insurance Contribution Act ("FICA") and Medicare taxes as required by law with respect to settlement payments to members of each proposed class, except for the portion of taxes paid directly by Maxim for current employees in 2014, which amount is not deposited in the Qualified Settlement Fund.

Maxim will withhold, pay, and report applicable payroll taxes for all current Maxim employees in 2014 and cut the checks for the W-2 wages portion of the

payments to current employees ("2014 employee payments").  This achieves tax savings associated with payroll taxes for current employees but does not affect the sum due to the Participating Class Members pursuant to the settlement.  Maxim will provide the W-2 checks to the Claims Administrator to enclose in one mailing to the Participating Class Member, along with the 1099 check to be prepared by the Claims Administrator.  While the W-2 portion of the Weeks Worked for current employees is part of the Maximum Settlement Amount, this portion will not be deposited in the Qualified Settlement Fund with the Claims Administrator, but rather will be paid through Maxim's payroll system with applicable payroll tax withholdings.

Individuals who submit a timely and valid Claim and Consent to Join Form, Named Plaintiffs, and existing FLSA Opt-Ins who receive a share of the settlement (collectively, "Participating Claimants") shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income tax or other tax or any other withholdings, if any, on any of the payments made pursuant in accordance with this settlement.

In exchange for the settlement, Participating Claimants, and members of each of the Rule 23 Classes who do not opt-out, will release Defendant from all wage-related claims asserted or that could have been asserted in this lawsuit up to

the date of Final Approval in accordance with the terms of the Stipulation and Settlement Agreement.

### 3.   ATTORNEYS' FEES AND COSTS

As indicated above, Class Counsel separately filed an application for an award of attorneys' fees and reimbursement of litigation expenses incurred in the prosecution of this lawsuit and the finalization of this Settlement.  Dkt. 116.

### 4.   PAYMENTS TO NAMED CLASS REPRESENTATIVES

In addition to their share of the settlement as members of one or more of the proposed classes, each Class Member will receive an enhancement award $1,000.00 each.  The exception is Named Plaintiff Ryan Stelmachers, who will receive an enhancement award in the amount of $2,500.00.  The total incentive awards to all Named Plaintiffs/Class Representatives is $22,500.00.

### 5.   FEES, COSTS, AND EXPENSES OF THE ADMINISTRATOR

The Court approved the use of Rust as the settlement and Claims Administrator.  As part of the Settlement, Defendant agreed to pay the fees and expenses incurred by Rust separately from the Maximum Settlement Amount.  The total fees and costs are estimated to be $43,572.63. *See* LeFebvre Dec. at ¶19.

### 6.   LWDA

As part of the settlement, the parties have agreed that $2,500.00 should be paid to the California Labor and Workforce Development Agency (the "LWDA").

The $2,500 payment represents the civil penalties associated with the claims asserted by California Named Plaintiffs Michael Bonds, Lauren Dudoit, and Mark Teague on behalf of themselves and the California Rule 23 class in accordance with the California Private Attorneys General Act, Labor Code § 2699. Maxim will make this payment directly to the LWDA, and it will not be deducted from the Maximum Settlement Amount.

## 7.  DISTRIBUTION TO CLASS MEMBERS

Participating Claimants will be entitled to a share of the Net Settlement Amount proportionate to their weeks worked during the relevant limitations period. The Net Settlement Amount consists of the Maximum Settlement Amount less the enhancement awards and Class Counsel's attorneys' fees and costs.

Participating Claimants will be compensated from the sum arrived at from the Net Settlement Amount based on his/her workweeks as a salaried Homecare Recruiter during his/her applicable statutory time period. The following formulas will be used for the distribution of any compensation to the Participating Claimants:

### a.  *Participating Claimants Outside of California*

Weeks Worked x Workweek Amount = Payment

Fifty percent (50%) of the total payment to that Participating Claimant shall be deemed payment in settlement of claims for unpaid overtime or other wages and is subject to appropriate deductions and withholdings for wages by the Claims Administrator. Fifty percent

(50%) shall be deemed payment in settlement of claims for liquidated damages, interest, and all other non-wage income.

### b.     *Participating Claimants in California*

Weeks Worked x Workweek Amount x 2 = Payment

Fifty percent (50%) of the total payment to that Participating Claimant shall be deemed payment in settlement of claims for unpaid overtime wages, premium wages, or other wages, subject to appropriate deductions and withholdings for wages by the Claims Administrator. Fifty percent (50%) shall be deemed payment in settlement of claims for statutory and civil penalties, liquidated damages, interest, and all other non-wage income.

Defendant shall fund the full amount of the settlement ($1,575,000.00) into the Qualified Settlement Fund (with the exception of "2014 employee payments") and shall not retain any portion of the Net Settlement Amount not paid out as individual settlement awards to Participating Claimants (except for any checks not cashed within 180 days).   Instead, all unclaimed settlement funds will be distributed to all Participating Claimants on a pro rata basis.  However, Defendant will retain any monies from settlement checks that are not cashed within one hundred eighty (180) days from mailing.

## 8.     ADMINISTRATION OF NOTICE, OPT-OUT, OPT-IN AND OBJECTIONS PROCESS

The Settlement preliminarily approved by this Court set forth a fair and reasonable notice process which complied with the requirements of Fed. R. Civ. P. 23(e).  As shown below, this notice process and claims administration has been diligently implemented since preliminary approval on April 30, 2014.

On or about May 2, 2014, Rust received text for the Notice, Claim Form, Exclusion Form and Change of Address Form from Counsel.  A draft of the notice packet was prepared by Rust and approved by the parties prior to mailing. LeFebrve Dec. at ¶ 6.

On or about May 21, 2014, Defendant provided Rust with a mailing list (the "Class List") containing the Class Member's names, last known addresses, social security numbers, employee ID numbers, claims status (Rule 23 or FLSA), opt-in status, work state, and the number of weeks worked during the Class Period. The Class List contained data for 550 potential Class Members.  *Id*. at 7.

On June 12, 2014, Notice Packets were mailed to 550 Class Members contained in the Class List via first class mail. The notice packet advised Class Members they could submit an Exclusion Form post-marked by July 28, 2014, or a Claim Form post-marked by August 11, 2014 (for individuals subject to the "skip trace" procedure in Settlement Agreement, the Claim Form must be postmarked by August 18, 2014).  *Id*. at 9.

On July 14, 2014, postcards were mailed to 426 Class Members who had not submitted a Claim Form or an Exclusion Form as of that date.  The postcard served as a reminder of the postmark deadline of August 11, 2014 for Claim Forms and also provided the phone number for Rust so Class Members could call to request another copy of the Class Notice. *Id*. at 10.

The reaction of the Class Member was very positive and approximately 255 individuals representing approximately 20,865.14 workweeks made the choice to participate. *Id*. at ¶¶ 13 and 16. No individuals objected to the terms of the Settlement and only one (1) individual elected to opt-out by submitting a timely and valid opt-out form. *Id*. at ¶¶ 17-18. The average individual payout to Class Members is approximately $3,488.56 and the highest claim paid is approximately $14,910.04. *Id*. at ¶ 16. Moreover, because the settlement is non-reversionary, the value of each workweek to the Class Members increased from approximately $31.72 to approximately $51.16. *Id*.

### 9.   PAYMENTS BY DEFENDANT TO PARTICIPATING CLAIMANTS, ADMINISTRATOR, AND CLASS COUNSEL

Plaintiffs also seek final approval of the terms of payment preliminarily approved by this Court. A summary of those terms are as follows:

a.   Within three (3) business days of the Effective Date of the Settlement, Defendant shall pay to the Qualified Settlement Fund, the amount of attorneys' fees and costs awarded by the Court.

b.   Within ten (10) business days after the Effective Date, Defendant shall pay into the Qualified Settlement Fund the remainder of the $1,575,000.00 Maximum Settlement Amount less "2014 employee payments", which includes Enhancement Awards.

c.   Within fifteen (15) business days after Defendant has made the payment to the administrator, the administrator shall mail to each Participating Claimant at his/her last known address, or updated address if obtained, his/her individual settlement payment, and any enhancement awards. With respect to Participating Claimants who were or are employed by Defendant in 2014, Defendant shall deliver

checks produced by Defendant's payroll provider (less employer tax withholdings) to the Claims Administrator for mailing by the Claims Administrator within the same fifteen (15) business days referenced in the previous sentence.

**10.    RELEASE OF CLAIMS**

In accordance with the terms of the Stipulation and Settlement Agreement, in exchange for the settlement, Participating Claimants and members of each of the Rule 23 classes who do not opt-out will release Defendant from all Non-FLSA Claims asserted or, based on the facts as pleaded, that could have been asserted in these lawsuits up to the date of Final Approval.  In addition, each Class Member who property submitted a timely and valid claim and consent form will release all FLSA Claims that accrued up to the date of Final Approval.

**IV.    <u>FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>**

It is long-settled that "compromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 585 (1910); *accord MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 541 (8th Cir. 2008) (noting "our strong public policy of encouraging settlement").  This policy is particularly strong where complex class action litigation is concerned, as this Court and many others have noted.  *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) ("[S]ettlements of class actions are highly favored in the law

and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits.") (citation and internal quotation marks omitted); *Laube v. Campbell*, 333 F. Supp. 2d 1234, 1238 (M.D. Ala. 2004) ("Judicial policy favors voluntary settlement of class-action cases").

The rationale for this policy is simple. "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd*, 525 U.S. 315 (1999); *accord In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991) (class action settlements are favored because they "conserve[] scarce judicial resources"); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (class action settlements "conserve judicial resources by avoiding the expense of a complicated and protracted litigation process"); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 688 (N.D. Ga. 2001) (class action settlements "conserve scarce resources that would otherwise be devoted to protracted litigation").

1.    **THE SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL BY THE COURT**

The Parties seek *final* approval of the Stipulation and Settlement Agreement under both the FLSA and Fed. R. Civ. P. 23(e). "Compromises of disputed claims

are favored by the courts." *Williams*, 216 U.S. at 595. Settlement spares litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. The ultimate determination whether a proposed settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

As demonstrated below, both Plaintiffs and Defendant submit that the terms of the Settlement are fair and reasonable and in the best interests of all parties. All of the requirements and standards of final approval have been met or exceeded. Thus, final approval is warranted.

## 2. THE STANDARDS FOR FINAL APPROVAL UNDER FED. R. CIV. P. 23

As part of the Settlement, Plaintiffs sought certification of various Rule 23 classes under the wage and hour laws of California, Connecticut, Illinois, Massachusetts, Maryland, Missouri, Nevada, New York, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, and Washington. Fed. R. Civ. P. 23 provides the mechanism for certifying a class action, including, as here, through a class certified for settlement purposes. Specifically, Fed. R. Civ. P. 23(e) states:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

   (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

   (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

   (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

   (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

   (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

The gravamen of an "approvable" proposed settlement is that it be "fair, adequate, and reasonable and is not the product of collusion [between the parties]." *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 (11th Cir. 1994). The Eleventh Circuit uses a six-factor test in determining the appropriateness of a proposed settlement: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity,

expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

### A.   <u>All of the standards for approval have been met</u>

#### *(1)  The likelihood of success at trial*

Class Counsel carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages.  While Class Counsel certainly believes the misclassification claims against Defendant are strong and could be proven at trial, a finding of liability is never assured, especially in complex litigation.  Even with a strong factual and legal case, the Class Members face significant risks in establishing liability and damages.  Further risks exist as they relate to certification of a class, overcoming attempted decertification and surviving an inevitable appeal.  Indeed, substantial risks and uncertainties were present from the outset of this case that made it uncertain that any relief for the Class Members would be obtained.

Class Counsel's view on the probability of any success on the merits was certainly influenced by the fact that Defendant has legal and factual grounds available to defend this action.  First, Defendant has litigated and prevailed in a similar case involving the classification of the Homecare Recruiter position.  *See Hudkins v. Maxim Healthcare Services, Inc.*, 39 F. Supp. 2d 1349 (M.D. Fla. July

2, 1998).  At a minimum, this decision potentially provides Defendant with a good-faith basis for the exempt classification of the Homecare Recruiter position. Second, numerous investigations by the Department of Labor (the "DOL") concluded that the Homecare Recruiter position was properly classified as exempt. While not all investigations reached a similar conclusion, the positive DOL findings certainly highlight the possibility that Defendant would prevail on the merits in this litigation.  Third, the record also contains evidence of the steps taken by Defendant over the past twenty years to investigate the classification of the Homecare Recruiter position.  The existence of such evidence certainly bolsters Defendant's defense to liquidated damages and willfulness, two issues which, if resolved in Defendant's favor, would undoubtedly have had a detrimental impact on the damages available to the Class Members.

While Class Counsel understandably takes issue with the viability of some of these alleged defenses, the risks associated with the continued litigation of the Homecare Recruiter misclassification claims simply cannot be disregarded in measuring the reasonableness of the settlement.

### (2) The range of possible recovery

The range of possible recovery also supports the reasonableness of the settlement. In assessing this factor, the Court determines the value of the settlement in light of the potential for recovery.  *In re Domestic Air Transp.*, 148 F.R.D. at

319.  But in making this comparison, "the trial judge ought not try the case in the settlement hearings."  *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977). And, it should not "be forgotten that compromise is the essence of a settlement."  *Id.*

In this case, the Named Plaintiffs, Existing FLSA Opt-Ins, and Rule 23 Class Members seek unpaid overtime wages, liquidated damages, statutory penalties, civil penalties, interest, attorneys' fees and costs.  As discussed throughout, the Parties reached a substantial settlement in the amount of $1,575,000.00 to settle these claims.  This settlement is fair and offers each Participating Claimant the opportunity to recover a meaningful amount of compensation. The formulas used to compensate the Participating Claimants are reasonable, consistent with other wage and other settlements approved by Courts in this district and others, and applied in a manner which does not discriminate against any of the Participating Claimants.  In fact, the formulas used in this matter are based on the formulas used in the prior Maxim Homecare and Staffing Recruiter FLSA and Rule 23 overtime case, *Ene, et al. v. Maxim Healthcare Services, Inc.* (S.D. Tex. 4:09-CV-02453) ("*Ene* Settlement"),[2] that was approved by the United States District Court for the Southern District of Texas on November 2, 2012.

---

[2] The full consolidated case name is "*Tricia Ene, Julian Betancourt, Benjamin Matthew Ruiz-Stupi, Aimee McPherson, Yves Antoine, Sean Cummings and Donald Bradetich, individually and on behalf of all other similarly situated v. Maxim Healthcare Services, Inc.*"

The reasonableness of the settlement is underscored by the fact that Defendant has various defenses to the calculation of damages which, if successful, would shorten the applicable statute of limitations, preclude the payment of overtime at one and one-half times the regular rate of pay, prevent the recovery of liquidated (or double) damages, and/or eliminate certain statutory and civil penalties.  Moreover, had the parties not reached a settlement, Defendant fully intended to seek class decertification.  If Defendant's motion was granted, each opt-in Plaintiff would be forced to pursue his/her claims on an individual basis—a difficult option for many who lack the financial resources to pursue litigation against a corporation like Maxim.  Finally, if class certification of the state law claims were denied, many Class Members would have not had an opportunity to pursue their claims against Defendant or obtain any recovery.

These reasons demonstrate why this settlement is fair and reasonable and in the best interests of the Named Plaintiffs, Existing FLSA Opt-Ins, and Rule 23 Class Members.

> (3)  *The point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable*

In assessing the settlement, the Court must determine "whether it falls within the 'range of reasonableness,' not whether it is the most favorable possible result in the litigation."  *In re Domestic Air Transp.*, 148 F.R.D. at 319 (quoting *Fisher Brothers v. Cambridge-Lee Indus.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).

As the Fifth Circuit explained:

[I]t [should not] be forgotten that compromise is the essence of a settlement.  The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.

*Cotton*, 559 F.2d at 1330 (citation omitted).

The Court's first step in assessing where the settlement falls within the range of reasonableness is the examination of the total value of the settlement to the class.  Then taking into account relevant factors such as the likelihood of success on the merits and defendants' financial position, the Court must determine whether the settlement falls at a point within the range of recovery which is reasonable.  The total value of the settlement is $1,575,000.00.  In determining under these circumstances whether the amount of the settlement is reasonable, "the Court is not confined to the mechanistic process of comparing the settlement to the estimated recovery times a multiplier derived from the likelihood of prevailing on the merits."  *In re Domestic Air Transp.*, 148 F.R.D. at 323 (*quoting In Re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981)).

Here, the Parties used a compromised weekly rate of pay to compensate Class Members at approximately $34.58 per week worked, except for the California Class Members, for whom that amount was doubled.  These amounts represent approximately one-third of what Class Members could possibly recover

on average if they were to proceed to trial.  For the California Class Members, the amount was doubled to reflect the increased damages and additional liability available to them under California state law.  No other state has such pro-plaintiff wage and hour laws, and thus no other state received the additional payment.  In addition, as there is no reversion in this matter other than uncashed checks (unlike the *Ene* Settlement), it is likely that Participating Claimants, weeks worked amount will increase based on unclaimed work week amounts for class members who do not submit a claim form, subject to adjustment based on any late claimants permitted to join the settlement by Maxim.

### (4)  *The complexity, expense, and duration of the litigation*

It goes without saying that misclassification class and collective actions involving challenges to corporate-wide human resources practices are complex.  As discussed above, both parties are represented by Counsel with extensive experience in handling these cases.  *See* Dkt. 133-4, Thompson Decl. at ¶ 1.  They often require, as in this case, the review of numerous statutes, regulations, and case law.  The parties are required to analyze and litigate issues concerning liability, damages, class certification, discovery and a host of other issues which are unique to wage and hour litigation.  There are few "bright line" tests.  As such, this type of litigation can be very challenging and difficult.

Moreover, there is no reason to doubt that further litigation would be both costly and time-consuming. Both Parties already expended considerable time and resources litigating this case. Many hours of attorney and paralegal time have been consumed during the pendency of the case. *Id.* at ¶ 16. The Parties conducted numerous conference calls and exchanged hundreds of e-mails and correspondence. Many documents have been exchanged and reviewed. *Id.* Further, as the docket entries in the case confirm, virtually every conceivable legal issue would need to be litigated. Without a settlement, there is no doubt that the Parties would continue litigating this case for years with the same tenacity.

### (5) *The substance and amount of opposition to the settlement*

The Court must also "examine the settlement in light of the objections raised and set forth on the record reasoned responses to the objections including findings of facts and conclusions of law necessary to support the response." *In re Domestic Air Transp.*, 148 F.R.D. at 323 (*quoting Cotton*, 559 F.2d at 1331). The number of objectors is but a factor in the Court's consideration. "A settlement can be fair notwithstanding a large number of class members who oppose." *Id.* Here, the Named Plaintiffs approve of the settlement. Importantly, there are **no objectors** to the Settlement. *See* LeFebrve Dec. at ¶ 17.

### (6) *The stage of proceedings at which the settlement was achieved*

This prong of the analysis "captures the degree of case development that class counsel have accomplished prior to settlement." *Seidman v. Am. Mobile Sys.*, 965 F. Supp. 612, 619 (E.D. Pa. 1977). "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). However, the "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999).

This case was sufficiently advanced at the point that settlement was reached. The case was conditionally certified as a collective action under the FLSA. Prior to reaching a settlement, the Parties engaged in substantial discovery. As discussed herein, the formal and informal discovery conducted by the Parties in this case was comprehensive and time-consuming. Information and documents concerning opt-in plaintiffs was exchanged, reviewed, and processed by each side for trial use. Indeed, there is no dispute that the Parties thoroughly investigated the relevant facts and legal issues through every means available. Such an undertaking yielded substantial information, which allowed the Parties to discuss intelligently

and freely the pros and cons of settlement.  Accordingly, the standards for final approval under Fed. R. Civ. P. 23(e) are met, and the Settlement should be given final approval by this Court.[3]

### 3.   THE STANDARD FOR FINAL APPROVAL UNDER THE FLSA

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of unpaid wages, or their unpaid overtime compensation, as the case may be ...."  29 U.S.C. § 216(b).  FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b).  *Lynn's Food Stores, Inc. v. United States U.S. Dep't of Labor*, 679 F.2d 350, 1353 (11th Cir. 1982).  If the settlement of an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation."  *Id.* at 1354-55.  For all of the foregoing reasons, this settlement is a fair and reasonable compromise and should be given final approval under the appropriate FLSA standards.

## V.   **FINAL CERTIFICATION OF THE SETTLEMENT CLASSES IS APPROPRIATE**

---

[3]   Defendant timely and properly filed notification of this Stipulation with the appropriate governmental officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.  *See* copies of CAFA letters and confirmations of receipt, attached as *Exhibit C.*

Pursuant to the Settlement, and in accordance with the model of other similar wage and hour cases that counsel have settled in the federal courts, the Parties have stipulated, for settlement purposes only, to the following Rule 23 classes:

All current and former salaried Homecare Recruiters in New York at any time six (6) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Oregon at any time six (6) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in California at any time four (4) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Illinois at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Maryland at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Pennsylvania at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Washington at any time three (3) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Connecticut at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Massachusetts at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Missouri at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in Nevada at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in New Jersey at any time two (2) years prior to the date of the Order Granting Preliminary Approval;

All current and former salaried Homecare Recruiters in North Carolina at any time two (2) years prior to the date of the Order Granting Preliminary Approval; and

All current and former salaried Homecare Recruiters in Ohio at any time two (2) years prior to the date of the Order Granting Preliminary Approval.

Courts are authorized to adjudicate class-wide claims based on a common course of conduct. The United States Supreme Court in *Amchem* addressed the settlement class issue. 521 U.S. at 591, 617. The court held that a district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but that the other requirements for certification must still be satisfied. *Id.* at 620. Each of the requisites for class certification are satisfied here and warrant final approval. Fed. R. Civ. P. 23(a) and (b)(3).

## 1. THE ELEMENTS OF RULE 23(A) ARE SATISFIED FOR SETTLEMENT PURPOSES

### A. <u>Numerosity</u>

The numerosity requirement is met if the class is so large that joinder of all members would be impractical. Fed. R. Civ. P. 23(a)(1). In determining whether a plaintiff has satisfied the numerosity requirement, a court may consider factors including the size of the class, geographical dispersion, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's

claim.  *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (finding over 30 members sufficiently numerous for class certification); *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity.").

In this case, the non-FLSA Rule 23 classes consist of hundreds of Class Members in multiple states.  This is sufficient to satisfy the numerosity requirement, as joinder of this many parties would be impracticable.

### B.   Commonality

Fed. R. Civ. P. 23(a)(2) requires questions of law and fact to be common to the class.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 695, 2003 U.S. Dist. LEXIS 4538, at *94 (N.D. Ga. 2003) (*quoting Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998)).  This requirement is permissively construed. *Hanlon*, 150 F.3d at 1019.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*  "Their claims must depend upon a

common contention of such a nature that it is capable of classwide resolution --
which means that determination of its truth or falsity will resolve an issue that is
central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at
2545; *Ross v. Citizens Bank, N.A.*, 667 F.3d 900, 908 (7th Cir. 2012) (in context of
state wage and hour off-the clock claim:  "To satisfy the commonality element, it is
enough for plaintiffs to present just one common claim.") (citing *Dukes*, 131 S. Ct.
at 2556); *see also Youngblood v. Family Dollar Stores, Inc.*, 2011 U.S. Dist.
LEXIS 115389, at *8 (S.D.N.Y. Oct. 4, 2011) (court certified retail store manager
misclassification claim because the "the crux of [the] case is whether . . . company-
wide policies, as implemented, violated Plaintiff's statutory rights").

Here, the primary questions of law and fact central to the claims against
Defendant include:

a.   Whether Defendant employed the Class Members within the
meaning of the applicable statutes, including the FLSA;

b.   Whether the Class Members were uniformly, willfully and
wrongfully classified by Defendant as exempt from overtime
compensation;

c.   Whether Defendant failed to pay the Class Members all
premium overtime compensation due to them by virtue of their
uniform designation as exempt;

d.   Whether the Class Members were expected to, and/or were
mandated to, regularly work overtime hours each workweek;

e.   Whether Defendant failed to pay the Class Members for all
hours worked;

     f.     Whether Defendant violated any other statutory provisions regarding compensation due to the Class Members; and

     g.     Whether the Class Members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed Class Members share sufficient commonality to satisfy Fed. R. Civ. P. 23(a)(2).

## C.    Typicality

To satisfy the typicality requirement Fed. R. Civ. P. 23(a)(3), each of the proposed Named Plaintiffs must show that his or her claims "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest* v. *Falcon*, 457 U.S. 147, 157 n.13 (1982). The test for typicality focuses on the similarity between a named plaintiff's legal and remedial theories and the theories of those whom he/she purports to represent. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1336 (11th Cir. 1984) (focusing on "nexus" between the class representative's claims or defenses and the common questions of law and fact among the class such that "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."). Representative claims are "typical" if they are reasonably co-extensive with those of absent class members, but do not have to be substantially identical. *Hanlon*, 150 F.3d at 1020.

Named Plaintiffs meet the typicality requirement here because they, like the many other salaried Homecare Recruiters employed by Defendant, were not paid overtime because of Defendant's company-wide and uniform policy of classifying Homecare Recruiters as exempt.  Named Plaintiffs' legal claims are typical of those of the Class as a whole because they apply the same legal theory to the same policies and practices.

### D.   **Adequacy**

Representation is adequate if (1) the named plaintiffs and their counsel are not disqualified by conflicts of interests and (2) named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  *Bacon v. Stiefel Labs., Inc.*, 275 F.R.D. 681, 692 (S.D. Fla. 2011) (*quoting Kirkpatrick v. J.C. Bradford 7 Co.*, 827 F.2d 718, 726 (11th Cir. 1987) (*rev'd on other grounds*)). Absent evidence to the contrary, a proposed class representative's adequacy of representation is presumed.  *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002); *Access Now, Inc. v. Ambulatory Surgery Center Group, Ltd.*, 197 F.R.D. 522, 528 (S.D. Fla. 2000).

Here, Class Counsel has substantial class action experience litigating, trying and settling wage and hour cases similar to this one.  Moreover, Class Counsel has been primarily responsible for litigating the case against Defendant and has superior knowledge of the relevant facts and legal issues.

Likewise, the Named Plaintiffs have shown themselves to be adequate representatives of the class, as they share interests with the class and have pursued those interests vigorously.  Named Plaintiffs have devoted time and effort in prosecuting the class claims including assisting counsel with investigating and litigating the cases, and were willing to serve as class representatives.

### 2.     THE REQUIREMENTS FOR A CLASS UNDER FED. R. CIV. P. 23(B)(3) HAVE BEEN SATISFIED

"[Rule 23(b)(3)] encompasses those cases in which a class action would achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Notes of Advisory Committee on Rules, 1966 Amendment.  Class actions may be certified where common questions of law and fact predominate over questions affecting individual members, and where a class action is superior to other means of adjudicating the controversy.   The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication.  *Amchem*, 521 U.S. at 623.  The court must rest its examination on the legal or factual questions of the individual class members.  *Hanlon*, 150 F.3d at 1022.  Although Fed. R. Civ. P. 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues.  *In re Sugar Industry Antitrust Litig.*, 73 F.R.D. 322, 344 (E.D. Pa. 1976).  The Court must find that "the group for which

certification is sought seeks to remedy a common legal grievance." *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 348-49 (N.D. Ill. 1978); *Dietrich v. Bauer*, 192 F.R.D. 119, 127 (S.D.N.Y. 2000) (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class").  Rule 23(b)(3) does not require that all questions of law or fact be common.  *See In re Telectronics Pacing Systems*, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997).

Here, the alleged company-wide policies affected the claims of Defendant's current and former salaried Homecare Recruiters.  Thus, while there may be some variation between individual Class Members' claims (*e.g.*, the actual amount of damages), common questions of law and fact predominate for settlement purposes.  *See* Section V (1)(B), *supra*.  Named Plaintiffs maintain that these issues present common operative facts and common questions of law which predominate over any factual variations in the application of the classification and compensation policies to individual salaried Homecare Recruiters.

The Court must also consider if a class action is superior to individual suits. *Amchem*, 521 U.S. at 615.  The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023.  Here, as in *Hanlon*, the alternative methods of resolution are individual

claims for relatively small amount of damages.   These claims would "prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery."   *Id.*   The Stipulation and Settlement Agreement provides the Class Members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that any injured Class Member will obtain necessary and timely relief at the conclusion of the litigation process.

The class action device could also conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.   Litigation costs would surely surpass the average recover for each Class Member.   For these reasons, the proposed Settlement Classes should be certified and given final approval.

## V.   THE COURT SHOULD GIVE FINAL APPROVAL TO THE ENHANCEMENT AWARDS TO THE NAMED PLAINTIFFS

The proposed enhancement awards to each of the Named Plaintiffs is intended to recognize their initiative and efforts on behalf of the Class Members. The important contribution of the Named Plaintiffs is well noted. Each agreed to put his or her name on a federal complaint, and each participated in the investigation and prosecution of this matter. Thus, a total of $22,500.00 will be deducted from the Maximum Settlement Amount.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of class action litigation." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *see also* Herr, *Manual for Complex Litigation*, §30.42 (West Group 2001) (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery"). As such, final approval should be given to the enhancement awards preliminarily approved by this Court.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, the parties respectfully request that this Court: (1) grant this Motion for Final Approval of Settlement; (2) grant the pending Motion for Attorneys' Fees and Costs; and (3) enter the proposed Judgment and Order of Final Approval attached hereto as *Exhibit B*.

Respectfully Submitted,

Dated:  August 21, 2014            */s/Jesse L. Young*
                                   Jason J. Thompson
                                   MI Bar No. P47184
                                   Jesse L. Young
                                   MI Bar No. P72614
                                   SOMMERS SCHWARTZ, P.C.
                                   One Towne Square, Suite 1700
                                   Southfield, Michigan 48076
                                   248-355-0300
                                   jyoung@sommerspc.com
                                   jthompson@sommerspc.com

Timothy J. Becker
MN Bar No. 256663
Jacob R. Rusch
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Fax: (612) 436-1801
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiffs*

Amanda A. Farahany, GA Bar No. 646135
V. Severin Roberts, GA Bar No. 940504
BARRETT & FARAHANY, LLP
1100 Peachtree Street, NE Suite 500
Atlanta, GA 30309
404-214-0120
vsroberts@bf-llp.com
amanda@bf-llp.com

*Local Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in local rule 5.1(C) and 7.1(D).

/s/ Jesse L. Young
Jesse L. Young, Esq.


## CERTIFICATE OF SERVICE

I certify that on August 21, 2014, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ Ayanna Turner
aturner@sommerspc.com